624 F.2d 857
 1980-2 Trade Cases 63,428
 Benjamin RITTMILLER, d/b/a Ben's Service, Appellant,
v.
BLEX OIL, INC., and Raymond Blexrud, Appellees.
D. JOHN, INC., d/b/a Don's Service, Appellant,
v.
BLEX OIL, INC., and Raymond Blexrud, Appellees.
 Nos. 79-1875, 79-1876.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 14, 1980.
Decided July 11, 1980.
 
 1
 Gary E. Persian, Smith & Persian, Minneapolis, Minn., for appellant; Dennis E. Dalen, Minneapolis, Minn., on brief.
 
 
 2
 Louis L. Ainsworth, Wiese & Cox, Minneapolis, Minn., for appellee; Paul G. Neimann and Curtis D. Smith, Minneapolis, Minn., on brief.
 
 
 3
 Before HEANEY and ARNOLD, Circuit Judges, and SACHS, District Judge.*
 
 
 4
 SACHS, District Judge.
 
 
 5
 Benjamin Rittmiller d/b/a Ben's Service and D. John, Inc. d/b/a Don's Service appeal from an order entered in the district court for the District of Minnesota[1] denying them preliminary injunctive relief. These actions have been combined for purposes of appeal. For the reasons set forth below, we affirm the order of the district court.
 
 
 6
 Each plaintiff operates a service station that is owned by the individual defendant, Raymond Blexrud. The premises are occupied by plaintiffs without formal leases, on a monthly rental orally specified. The corporate defendant, Blex Oil, Inc. ("Blex"), owned by Blexrud, supplies gasoline to plaintiffs pursuant to oral agreements. The complaint alleges that the retail price that plaintiffs can charge for gasoline is set by oral agreement.
 
 
 7
 On June 25, 1979, plaintiffs set their own gasoline prices, without approval from Blex. Shortly thereafter defendant Blexrud notified each plaintiff of a drastic increase in the monthly rent, to $5,000 per month from $250 and $175 respectively. Apparently after objections were made that such rent increases were coercive efforts to cause violations of the antitrust laws, the rent increases were rescinded, and plaintiffs were given notices of termination of their tenancies, effective September 1, 1979. Plaintiffs allege that defendants' actions since June of 1979 are attempts to coerce plaintiffs to maintain retail prices at those levels set by defendant Blex.
 
 
 8
 The Court infers from a somewhat sketchy record that Blex tacitly acknowledges attempts to control the retail price of gasoline charged by plaintiffs at the service stations. Blex contends that plaintiffs have been managers of its service stations who are compensated by payment of a fixed commission, a number of cents per gallon sold. Compare, Simpson v. Union Oil Co., 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964). Blex further contends that its responsibility for retail pricing of gasoline is asserted by the United States Department of Energy, which classifies it as a retailer, and that it has entered into a supply contract or Participation Agreement with Kerr-McGee Corporation, requiring that Blex maintain certain price margins as a "reseller-retailer" of gasoline. Kerr-McGee is bound by a consent decree which apparently contains price restriction provisions.
 
 
 9
 Plaintiffs' four-count complaints are identical in all material aspects. Count One alleges a price-fixing conspiracy in the retail sale of gasoline, in violation of the federal antitrust laws. Plaintiffs claim $250,000 lost profits to be recovered threefold, with attorney fees. Count Two alleges that the individual defendant, Blexrud, has attempted to terminate plaintiffs' tenancies in retaliation for their independent pricing of gasoline. Plaintiffs seek injunctive relief under the federal antitrust laws. Count Three, asserting pendent jurisdiction, alleges a violation of the Minnesota antitrust laws by conduct previously alleged. Count Four, also a pendent jurisdiction claim, alleges that plaintiffs have acquired rights as franchisees under Minnesota's franchise statute (Minn.St. § 80C.01 et seq.) and, by reason of the statute, are entitled to a temporary injunction against terminations.
 
 
 10
 Upon presentation of verified complaints and arguments of counsel, the district court issued temporary restraining orders, without prejudice, however, to proceedings in state court to evict plaintiffs under Minnesota's unlawful detainer statute. After considering the affidavits of the parties and pertinent legal contentions, the temporary restraining orders were vacated by the district court on September 14, 1979, and motions for a preliminary injunction were denied. Motions to reconsider were thereafter denied, as were motions for injunctive relief pending appeal. This Court denied similar motions prior to oral argument and again, on May 1, 1980, after argument.
 
 
 11
 The scope of review on appeal from an order granting or denying a preliminary injunction is limited. It has been repeatedly ruled that such an interlocutory order may be reversed only if the trial court abused its discretion or based its decision on an erroneous legal premise. Federal Trade Commission v. National Tea Co., 603 F.2d 694, 696 (8th Cir. 1979). In light of the "large degree of discretion vested in the trial court," appellants carry a "heavy burden" when they seek to reverse the denial of a preliminary injunction. American Home Investment Company v. Bedell, 525 F.2d 1022, 1023 (8th Cir. 1975).
 
 
 12
 It has been recently acknowledged that this Circuit has not fully resolved the articulation of guidelines to be used by the district courts in ruling requests for a preliminary injunction. Minnesota Association of Health Care Facilities, Inc. v. Minnesota Department of Public Welfare, 602 F.2d 150, 152 (8th Cir. 1979). A significant new formulation appeared two years ago in Fennell v. Butler, 570 F.2d 263 (8th Cir. 1978), where the Court directed the district court on remand to apply standards that have been used in the Second Circuit. The Second Circuit has held that a preliminary injunction is authorized upon a showing of either 1) probable success on the merits and possible irreparable injury or 2) sufficiently serious questions going to the merits to make them fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. Sonesta International Hotels Corp. v. Wellington Associates, 483 F.2d 247 (2d Cir. 1973). These tests authorize the district court to examine summarily the merits of the dispute, the potential for immediate injury to the parties, and the availability of ultimate remedies less drastic than the granting of injunctive relief in the initial stages of litigation.
 
 I. The Antitrust Claims
 
 13
 The district court ruled that plaintiffs have established "fair ground for litigation". Plaintiffs do not argue for a more generous evaluation of their antitrust claims on appeal and do not brief the antitrust questions.
 
 
 14
 Plaintiffs' affidavits filed in support of the motions for temporary injunctive relief tend to show that plaintiffs have been acting as independent dealers in recent years, thereby rendering illegal any retail price-fixing agreements with Blex. Assertions are made in defendants' brief, however, which, if proven, would place some doubt on the nature of the distribution system and the illegality of the alleged pricing practices of defendant Blex.
 
 
 15
 Plaintiffs made no written request for a hearing and it has not been demonstrated that an oral request was made to the district court. In the absence of an adequate factual record and briefing, the Court cannot meaningfully question the district court's tentative appraisal of the merits of the antitrust claims. The Court therefore accepts the characterization that there is "fair ground for litigation" of such claims.
 
 
 16
 The district court ruled that the balance of hardships did not decisively favor plaintiffs. For the reasons stated by the district court, we agree that the equities do not favor plaintiffs so decisively as to require entry of a preliminary injunction on the antitrust claims.
 
 
 17
 The court found that, if relief were granted, defendants would be locked into an unsatisfactory relationship for several years. This could occur, depending on the court's docket, unless the injunctive aspects of the case were separated out for prompt trial and were certified for early appeal. While the injunctive request was in terms prohibitory, as a practical matter plaintiffs were seeking more than maintenance of the status quo. Plaintiffs had no long-term lease or supply agreements with defendants. An absolute freeze of conditions during extensive litigation of the damage suit would modify the relationship between the parties, by establishing rigid rent and price structures. If the district court were to assume responsibility for granting relief from unsatisfactory terms, however, it would be drawn into contract-writing for the parties. Chief Judge Devitt noted this issue, in denying a preliminary injunction.[2] Additional possible hardships that were not mentioned by the district court are (1) Blex's exposure to sanctions under federal law if plaintiffs should charge a higher retail price for gasoline than Department of Energy regulations permit Blex to charge, as a "reseller-retailer" (10 C.F.R. § 212.91, et seq.), and (2) Blex's exposure to breach of contract claims by Kerr-McGee, its supplier, under a contract that apparently guarantees compliance with price regulations. The court's failure to mention these hazards may be explained by defendants' failure to show that plaintiffs are threatening to cause violations of price regulations.
 
 
 18
 The district court further ruled that plaintiffs had not shown irreparable injuries, because treble damages would adequately compensate plaintiffs and plaintiffs had not made a sufficient showing to establish their inability to remain in business at another location or to continue litigating if evicted.
 
 
 19
 Second Circuit opinions support the district court's legal conclusions. It has been stated that a showing on a preliminary injunction that the balance of immediate hardships tips in favor of plaintiffs "does not eliminate the basic obligation of the plaintiff to make a clear showing of the threat of irreparable harm . . . In sum, the balancing of hardships test . . . necessarily includes the showing of irreparable harm." Triebwasser & Katz v. American Telephone & Telegraph Co., 535 F.2d 1356, 1359 (2d Cir. 1976).[3] General adequacy of the treble damage remedy was suggested in a 1979 decision of that court. Jack Kahn Music Co., Inc. v. Baldwin Piano & Organ Company, 604 F.2d 755, 759, 763 (2d Cir. 1979).
 
 
 20
 In a case where the court concluded that antitrust plaintiffs would have been unable to prosecute a damage suit if their franchises were terminated, the Seventh Circuit ruled that a preliminary injunction should have issued. Milsen Company v. Southland Corporation, 454 F.2d 363 (7th Cir. 1971). The Seventh Circuit thereafter affirmed the denial of a preliminary injunction in a similar case, however, where plaintiffs failed to show inability to finance their antitrust damage claims. Fox Valley Harvestore, Inc. v. A. O. Smith Harvestore Products, Inc., 545 F.2d 1096 (7th Cir. 1976). In the latter case, the court referred to the presumed adequacy of a treble damage claim, if susceptible of prosecution.[4] l. c. 1098.
 
 
 21
 We have previously mentioned the district court's conclusion in this case that plaintiffs have not adequately demonstrated their inability to finance litigation. The Court notes that antitrust counsel may often be available to prosecute an apparently meritorious treble damage claim under a contingent fee arrangement.
 
 
 22
 Plaintiffs offer a "now or never" argument, asserting that ultimate injunctive relief would be unlikely if they were evicted and substitute station managers or dealers were installed by defendants. See, however, the observation of the Seventh Circuit that a party who ejects a franchisee during litigation does so "at its own risk". Milsen Company v. Southland Corp., 454 F.2d 363, 369 (7th Cir. 1971). After trial on the merits establishing a violation of law by defendants, the district court may make "a determination of whether the risk was a permanent injunction returning the (premises) to the plaintiffs' possession", or damages compensating plaintiffs for their losses. Id.
 
 
 23
 Considering all of the above factors, we cannot say that the experienced district judge in this case abused his discretion in denying a preliminary injunction based on the antitrust claims. He did rule on a limited and somewhat unsatisfactory record. It was plaintiffs' duty, however, to make a record adequate for a favorable ruling, and the limitations of the record weigh against plaintiffs rather than the court below.
 
 II. The Franchise Claim
 
 24
 With respect to the alleged violation of the Minnesota franchise legislation, we conclude that the district court was correct in its denial of a preliminary injunction, because there has been no sufficient showing of a violation of the Minnesota statute and regulations adopted pursuant to such legislation. The district court ruled that plaintiffs had no fair ground for litigation, as that phrase is used in preliminary injunction analysis, because the Act limits protection to franchisees paying a franchise fee for the use of a franchisor's trade name, and plaintiffs were not franchisees within the meaning of the statute. The court ruled that the plaintiffs' claim that all motor vehicle fuel distributors are franchisees is inconsistent with the text of the Act, and is contrary to the legislative history which reveals an intent to apply the normal franchise tests to gasoline distributors.
 
 
 25
 Legislative materials and administrative regulations presented after the ruling below create for plaintiffs an arguable claim that service station operators may generally be considered "franchisees" under Minnesota law. We find it unnecessary to undertake a close review and evaluation of the legislation in light of the facts here presented, because the entire issue will be considered further by the district court, on a full record, and in any event we are dealing with issues which are ultimately questions of Minnesota law. We do note, however, that the applicable regulations may present the most serious problem to plaintiffs in seeking protection under the franchise law.
 
 
 26
 Plaintiffs' statutory protection could go no farther than may be prescribed by administrative regulation. The commissioner of securities of the Minnesota department of commerce is authorized by the Act to issue rules defining "unfair and inequitable" practices by franchisors. Minn.St. 80C.01, 80C.14.
 
 
 27
 The regulations are brought to our attention by an argument of plaintiffs. They assert that the notices of termination of their tenancies, although given more than thirty days prior to termination, violated the notice periods prescribed by regulation. See, however, University Community Properties v. New Riverside Cafe, Minn., 268 N.W.2d 573 (1978), citing Minn.St. 504.06. The Minnesota Supreme Court there held that statutory redemption provisions giving lessees protection during the term of "the original lease" can be "meaningfully applied only to leases for a fixed term and not to month-to-month tenancies at will." 268 N.W.2d at 575.
 
 
 28
 The notice period provided by statute and not by regulation would seem to control the termination of plaintiffs' tenancies. The cited regulations may also be inapplicable to oral supply arrangements.
 
 
 29
 We have examined the Rules and Regulations of the Securities Division, Department of Commerce, insofar as they relate to motor vehicle fuel franchises. Minn.Reg.S.Div. 1718(b). While not specifically stating that only those service station franchise agreements which are in writing are governed by such regulations, the language used strongly suggests that such was the intent of the commissioner.[5]
 
 
 30
 The parties have not briefed the question of applicability of the regulations to oral supply arrangements of indeterminate length, and we therefore leave all franchise law questions open for consideration of the district court, upon a full record.[6]
 
 
 31
 Not having been convinced that the district court erred in denying to plaintiffs summary protection under the Minnesota franchise law, we affirm the denial of a preliminary injunction.
 
 
 32
 The order of the district court is affirmed.
 
 
 
 *
 The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri, sitting by designation
 
 
 [1]
 The Honorable Edward J. Devitt, Chief Judge, United States District Court for the District of Minnesota
 
 
 [2]
 Plaintiffs argue that the district court is not likely to become "embroiled in drafting an agreement". They assert they have accepted two wholesale price increases during the initial months of litigation without "complaint . . . or incident". Whether such acquiescence would have occurred if plaintiffs had received the protection of a preliminary injunction is uncertain. Controversies requiring judicial supervision are certainly possible in a changing economy, where plaintiffs' supply arrangements are unwritten and no pricing formula or escalation provision appears in the record. On plenary hearing, however, it may of course appear that future pricing could be governed by simple standards
 
 
 [3]
 Accord, Frejlach v. Butler, 573 F.2d 1026, 1027 n. 4 (8th Cir. 1978)
 
 
 [4]
 We do not decide that the cited rulings of the Second and Seventh Circuits establish a general principle requiring denial of preliminary injunctions against termination of a distributorship unless a plaintiff proves that the ability to litigate a treble damage claim will be "crippled if not destroyed". Courts have frequently granted preliminary injunctions even though a damage suit may have been an available alternative. E. g., Paschall v. Kansas City Star Co., 441 F.Supp. 349 (W.D.Mo.1977); Brandeis Machinery & Supply Corp. v. Barber-Greene Co., 503 F.2d 503 (6th Cir. 1974). As stated in the latter decision, the district courts have "broad discretion . . . to grant or withhold interlocutory relief" (l. c. 505), and a particular case may turn on the apparent strength or weakness of the claim on the merits or other factors affecting the balance of equities. The availability of treble damage relief is an important consideration, however, weighing against granting an interlocutory injunction
 
 
 [5]
 A "copy of the entire motor vehicle franchise contract or agreement proposed for use" must be set forth in "the body of (a) public offering statement". Minn.Reg.SDiv 1718(b)(1)(aa). "The dealer shall have the unconditional right to cancel his franchise agreement until midnight of the seventh business day after the day on which the agreement was signed . . ." Minn.Reg.SDiv 1718(b)(3)(aa). "The supplier may set forth in the franchise agreement the required number of hours per day . . . that the dealer must maintain his retail outlet open for business . . ." Minn.Reg.SDiv 1718(b)(3)(hh). "Any provisions regarding cancellation . . . shall be governed by the following rules . . ." Minn.Reg.SDiv 1718(b)(4). "Any provisions regarding the renewal of a franchise agreement shall be governed by the following rules . . ." Minn.Reg.SDiv 1718(b)(5). Provisions for cancellation shall not permit cancellations for decline in annual sales "below the figure set forth in the franchise agreement or otherwise agreed to by the parties in writing when the franchise agreement was signed." Minn.Reg.SDiv 1718(b)(4)(AA)(v)
 
 
 [6]
 We recognize the desirability of caution in statements bearing on the merits in any interlocutory appeal. See Paschall v. Kansas City Star Co., 605 F.2d 403, 407 n. 12 (8th Cir. 1979). In noting a possible basis for decision which was not discussed below or in the briefs of the parties, we emphasize that tentative conclusions as to Minnesota franchise law have been formulated for a limited purpose and are subject to reconsideration by the district court and by this Court in reaching a final judgment in this case. Chicago Great Western Ry. Co. v. Chicago B. & Q. R. Co., 193 F.2d 975, 979 (8th Cir. 1952); Berrigan v. Sigler, 499 F.2d 514, 518 (D.C.Cir.1974); Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 742 (2d Cir. 1953)