**DATAPHASE SYSTEMS, INC., Appellee,**

v.

**C L SYSTEMS, INC., Appellant.**

**No. 80–1111.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 24, 1980.

Decided Jan. 7, 1981.

* The Honorable Myron H. Bright, United States Circuit Judge, took no part in the consideration or decision of this case.

Edmund C. Case, Testa, Hurwitz & Thibeault, Boston, Mass., for appellant.

Gordon D. Gee, Rich, Granoff, Levy & Gee, Kansas City, Mo., argued, Gregory L. Vranicar, Kansas City, Mo., for appellee.

Before LAY, Chief Judge, HEANEY, BRIGHT, ROSS, STEPHENSON, HENLEY, McMILLIAN and ARNOLD, Circuit Judges, *en banc.*

HENLEY, Circuit Judge.

C L Systems, Inc. (CLSI) appeals from the district court's order of January 23, 1980, granting a preliminary injunction restraining CLSI from making "any false or misleading statement which disparages, directly or indirectly, plaintiff [Dataphase Systems, Inc.], its product, its financial condition or its ability to furnish goods and services." For reasons to be stated we vacate the preliminary injunction.

Dataphase, a Missouri corporation, and CLSI, a Massachusetts corporation, compete for contracts for the installation of computerized, automated library circulation systems. Dataphase is a relative newcomer to the field. It started business and incorporated in December, 1975. By its own admission, CLSI is the established leader in the field of library automation.

On June 1, 1978 Dataphase filed its complaint in this suit against CLSI. Dataphase alleged that CLSI engaged in a course of conduct intended to restrain competition and deny market access to Dataphase, thereby eliminating and destroying Dataphase as a competitor. The course of anticompetitive conduct allegedly included deliberately bidding below cost in order to prevent Dataphase from receiving contracts; interfering with Dataphase's present and potential contractual obligations; making false statements to potential customers regarding Dataphase's reliability, solvency, and ability to furnish the goods and services bid upon; and, in general, falsely and maliciously disparaging Dataphase to its customers and potential customers, both orally and in writing.

The complaint alleged that this course of conduct constituted a violation of the antitrust laws, in particular section 2 of the Sherman Act, 15 U.S.C. § 2 (1976), and section 3 of the Robinson-Patman Act, 15 U.S.C. § 13a (1976), and that CLSI's false and malicious accusations unlawfully interfered with Dataphase's reasonable business expectancies. Dataphase sought treble damages and equitable relief enjoining CLSI from continuing the allegedly unlawful course of conduct. Federal jurisdiction exists under 28 U.S.C. §§ 1331, 1332, 1337 (1976).

CLSI denied the essential allegations of the complaint, and raised various defenses, *inter alia*, that all statements and representations made by CLSI to Dataphase's customers were true and not misleading. The parties proceeded with discovery, and in February and March, 1979 the district court held evidentiary hearings on Dataphase's request for a preliminary injunction. On January 23, 1980 the district court entered its order granting the preliminary injunction.

CLSI filed notice of appeal, and on March 20, 1980 this court entered an order remanding the matter "to the district court for the limited purpose of permitting that court to set forth in detailed findings those representations and statements of the appellant that it believes 'raise questions serious enough to require litigation.'"

On April 18, 1980 the district court certified limited findings. It found that "whether there is a dangerous probability of monopolization of a specific product market in a particular geographic market" constituted a "serious litigable issue." The district court paraphrased twelve statements which it observed that Dataphase claims are completely false, while CLSI contends they

are true. The district court stated that these statements "raise questions of fact which are serious enough to require litigation."

Without prejudice to the entry of a permanent injunction, we vacate the preliminary injunction and remand the case to the district court. We agree with the panel that justice would be served by proceeding to trial with all due haste in order to secure a ruling on the merits of the claims raised.

The court has considered this case *en banc* in an effort to clarify the standard to be applied by the district courts of this circuit in considering requests for preliminary injunctive relief. We apprehend that in recent years some misunderstanding of the standard has developed. We recognize that language in some of our recent opinions may have contributed to uncertainty as to the appropriate test or tests. Thus, we take this opportunity to reaffirm that there is a single "test" or list of considerations to be used in every case and to suggest its proper application.[1]

In *Minnesota Bearing Co. v. White Motor Corp.*, 470 F.2d 1323 (8th Cir. 1973), we enumerated four factors to be weighed by the district court in deciding whether to grant or deny preliminary injunctive relief: (1) whether there is a substantial probability movant will succeed at trial; (2) whether the moving party will suffer irreparable injury absent the injunction; (3) the harm to other interested parties if the relief is granted; and (4) the effect on the public interest. *Id.* at 1326. This statement of the standard, in particular the requirements of "substantial probability" and "irreparable injury," has become known as the "traditional test." *See, e. g., Young v. Harris*, 599 F.2d 870, 875–76 (8th Cir.), *cert. denied sub nom. Young v. Landrieau*, 444 U.S. 993, 100 S.Ct. 526, 62 L.Ed.2d 423 (1979); *Fennell v. Butler*, 570 F.2d 263, 264 (8th Cir.), *cert. denied*, 437 U.S. 906, 98 S.Ct. 3093, 57 L.Ed.2d 1136 (1978).[2]

Perhaps due to dissatisfaction with restrictive practical application of the language of the traditional test, this court offered a restated version in *Fennell v. Butler*, 570 F.2d 263. In that case we suggested that a preliminary injunction should issue:

upon a clear showing of either (1) probable success on the merits *and* possible irreparable injury, *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting preliminary relief.

*Id.* at 264.[3]

Some confusion apparently has been spawned by our characterization of the

1. Even things without life, giving a voice, whether pipe or harp, if they give not a distinction in the sounds, how shall it be known what is piped or harped? For if the trumpet give an uncertain voice, who shall prepare himself for war? So also ye, unless ye utter by the tongue speech easy to be understood, how shall it be known what is spoken? for ye will be speaking into the air. I Corinthians 14:7–9 (American Standard Version 1929).

2. For cases applying the so-called "traditional test," *see Modern Controls, Inc. v. Andreakis*, 578 F.2d 1264, 1267 n.4 (8th Cir. 1978); *Regents of the University of Minnesota v. NCAA*, 560 F.2d 352, 365 (8th Cir.), *cert. dismissed*, 434 U.S. 978, 98 S.Ct. 600, 54 L.Ed.2d 472 (1977); *Planned Parenthood of Minnesota, Inc. v. Citizens for Community Action*, 558 F.2d 861, 866 (8th Cir. 1977); *American Train Dispatchers v. Burlington Northern*, 551 F.2d 749, 751 (8th Cir. 1977); *Missouri Portland Cement Co. v. H. K. Porter Co.*, 535 F.2d 388, 392 (8th Cir. 1976); *Chicago Stadium Corp. v. Scallen*, 530 F.2d 204, 206 (8th Cir. 1976); *American Home Investment Co. v. Bedel*, 525 F.2d 1022, 1023 (8th Cir. 1975); *Nebraska Department of Roads v. Tiemann*, 510 F.2d 446, 447 (8th Cir. 1975); *Wounded Knee Legal Defense/Offense Committee v. FBI*, 507 F.2d 1281, 1287 (8th Cir. 1974).

3. This approach has been adopted in other circuits. *See, e. g., William Inglis & Sons Baking Co. v. ITT Continental Baking Co.*, 526 F.2d 86, 88 (9th Cir. 1975); *Gresham v. Chambers*, 501 F.2d 687, 691 (2d Cir. 1974); *Sonesta International Hotels Corp. v. Wellington Associates*, 483 F.2d 247, 250 (2d Cir. 1973). *See also Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841, 843–44 (D.C.Cir. 1977).

*Fennell* standard as an "alternative test."[4] Despite this label, we find no contradiction between *Fennell* and *Minnesota Bearing*. Whatever the verbal formulation, the relevant factors remain the same. Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.

■ The major difficulty with application of the traditional test has arisen from the phrase "probability of success on the merits." Some have read this element of the test to require in every case that the party seeking preliminary relief prove a greater than fifty per cent likelihood that he will prevail on the merits. Under this view, even if the balance of the other three factors strongly favored the moving party, preliminary relief would be denied if the movant could not prove a mathematical probability of success at trial. Although this construction of the "probability of success" requirement is technically possible, we reject it.

■ The very nature of the inquiry on petition for preliminary relief militates against a wooden application of the probability test. At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined.[5] The equitable nature of the proceeding mandates that the court's approach be flexible enough to encompass the particular circumstances of each case. Thus, an effort to apply the probability language to all cases with mathematical precision is misplaced.

■ In balancing the equities no single factor is determinative. The likelihood that plaintiff ultimately will prevail is meaningless in isolation. In every case, it must be examined in the context of the relative injuries to the parties and the public. If the chance of irreparable injury to the movant should relief be denied is outweighed by the likely injury to other parties litigant should the injunction be granted, the moving party faces a heavy burden of demonstrating that he is likely to prevail on the merits. Conversely, where the movant has raised a substantial question and the equities are otherwise strongly in his favor, the showing of success on the merits can be less.

■ It follows that the court ordinarily is not required at an early stage to draw the fine line between a mathematical probability and a substantial possibility of success. This endeavor may, of course, be necessary in some circumstances when the balance of equities may come to require a more careful evaluation of the merits. But where the balance of other factors tips decidedly toward movant a preliminary injunction may issue if movant has raised questions so serious and difficult as to call for more deliberate investigation.

This pragmatic approach is presupposed by our caselaw. Indeed, some of this court's early decisions were couched in

---

4. Cases recognizing an alternative test include *Rittmiller v. Blex Oil, Inc.*, 624 F.2d 857, 860–61 (8th Cir. 1980); *Chromalloy American Corp. v. Sun Chemical Corp.*, 611 F.2d 240, 244 (8th Cir. 1979); *Bio-Medicus, Inc. v. Shareholders*, 608 F.2d 1155, 1157 (8th Cir. 1979); *Minnesota Ass'n of Health Care Facilities, Inc. v. Minnesota Department of Public Welfare*, 602 F.2d 150, 152 (8th Cir. 1979); *Campbell "66" Express, Inc. v. Rundel*, 597 F.2d 125, 127 (8th Cir. 1979); *Dakota Wholesale Liquor, Inc. v. Minnesota*, 584 F.2d 847, 849 (8th Cir. 1978); *Modern Controls, Inc. v. Andreadkis*, 578 F.2d 1264, 1267 n.4 (8th Cir. 1978); *Frejlach v. Butler*, 573 F.2d 1026, 1027 n.4 (8th Cir. 1978).

5. The controlling reason for the existence of the judicial power to issue a temporary injunction is that the court may thereby prevent such a change in the relations and conditions of persons and property as may result in irremediable injury to some of the parties before their claims can be investigated and adjudicated.
*Love v. Atchison, T. & S. F. Ry.*, 185 F. 321, 331–32 (8th Cir.) (Sanborn, J.), *cert. denied sub nom. West v. Atchison, T. & S. F. Ry.*, 220 U.S. 618, 31 S.Ct. 721, 55 L.Ed. 612 (1911). *See also Chicago, B. & Q. R. R. v. Chicago Great Western R. R.*, 190 F.2d 361, 363 (8th Cir. 1951).

terms other than probability. In *Love v. Atchison, T. & S. F. Ry.*, 185 F. 321, 331–32 (8th Cir.) (Sanborn, J.), *cert. denied sub nom. West v. Atchison, T. & S. F. Ry.*, 220 U.S. 618, 31 S.Ct. 721, 55 L.Ed. 612 (1911), Judge Sanborn stated the issue as whether "questions presented in a suit for an injunction are grave and difficult...." *Id.* at 331. *Accord, Chicago, B. & Q. R. R. v. Chicago Great Western R. R.*, 190 F.2d 361, 363 (8th Cir. 1951). Other cases have required "a substantial controversy between the parties." *Benson Hotel Corp. v. Woods*, 168 F.2d 694, 697 (8th Cir. 1948) (Gardner, J.).[6] Our goal throughout has been to achieve a clear verbal formulation yet maintaining a flexible rule.[7]

■ In the instant case we concur with the opinion of the panel that the district court abused its discretion by issuing the preliminary injunction against CLSI.[8] We do not disagree with the findings of fact made by the district court but conclude that its findings do not support the relief granted. In particular, the district court did not find that Dataphase would suffer irreparable harm,[9] nor did it find a substantial probability that the statements made by CLSI were false or misleading and thus that Dataphase would prevail at trial.

■ In sum, whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest. The findings in the present case fail to satisfy this test.

The preliminary injunction is vacated without prejudice to the entry of injunctive relief, if during the trial of the case it appears that such relief should be given. The case is remanded to the district court for proceedings consistent with this opinion.

ROSS, Circuit Judge, concurring.

I concur in what I interpret to be this court's new test in determining whether a preliminary injunction should be granted. It is set forth in the next to the last paragraph of the opinion. I do so in the hope that after being understandably confused about what test our circuit has mandated, the district judges will now have an *en banc* determination of the proper test to follow.[1]

---

6. *Cf. Chicago, B. & Q. R. R. v. Chicago Great Western R. R.*, 190 F.2d 361, 363–64 (8th Cir. 1951):

   [The application for preliminary injunction] raised the question whether or not there were substantial questions of law and fact for determination and whether they were of such a substantial character as to require the preservation of the status quo until those questions could be determined.

7. *Cf.* 11 C. Wright & A. Miller, Federal Practice & Procedure § 2947, at 449–55 (1973).

8. We consistently have held that the grant of preliminary relief is within the discretion of the district court. *Planned Parenthood of Minnesota, Inc. v. Citizens for Community Action*, 558 F.2d 861, 866 (8th Cir. 1977); *Chicago Stadium Corp. v. Scallen*, 530 F.2d 204, 206 (8th Cir. 1976); *Benson Hotel Corp. v. Woods*, 168 F.2d 694, 697 (8th Cir. 1948).

9. This court previously noted that under any test the movant is required to show the threat of irreparable harm. *Rittmiller v. Blex Oil, Inc.*, 624 F.2d 857, at 861 (8th Cir. 1980); *Frejlach v. Butler*, 573 F.2d 1026, at 1027 n.4 (8th Cir. 1978). Thus, the absence of a finding

of irreparable injury is alone sufficient ground for vacating the preliminary injunction.

1. District Judge John W. Oliver recently summarized the extent of the confusion in his opinion in *ABA Distributors, Inc. v. Adolph Coors Company*, 496 F.Supp. 1194 (1980):

   Judge Donald D. Alsop, the district judge who denied preliminary injunctive relief in *Fennell*, recently commented in *Woida v. United States*, 446 F.Supp. 1377, 1383 (D.Minn.1978), that "until recently, the [Eighth Circuit] standard to be met by the party moving for a preliminary injunction was clearly defined." He added, however, that in *Fennell* "the Court of Appeals recently urged this Court to consider the adoption of alternative standards." Judge Alsop's prediction in *Woida* that "the question of the standard to be applied may not have reached its final resolution" has certainly been confirmed by the Eighth Circuit's recent opinions in *Rittmiller* and *Dataphase*.

   The confusion in the district courts, however, has taken a different form. In several recent decisions, the courts have applied both the "traditional" and the "alternative" tests. *Neil*

I do not share the opinion of the author of the majority opinion that "we find no contradiction between *Fennell* and *Minnesota Bearing*," and I feel that most of our district judges will also read this with some misgivings. *See Fennell v. Butler*, 570 F.2d 263 (8th Cir.), *cert. denied*, 437 U.S. 906, 98 S.Ct. 3093, 57 L.Ed.2d 1136 (1978). *See also Modern Controls, Inc. v. Andreadkis*, 578 F.2d 1264, 1267 n.4 (8th Cir. 1978).

Neither do I agree that the term "probability of success" does not necessarily mean a greater than fifty percent likelihood that the requesting party will prevail. If the courts which have used that phrase did not mean it to imply a better chance of prevailing than of not prevailing, they would have used the word "possibility" or another word of a similar meaning. I cannot agree to this illogical exercise in semantics.

The plain and simple truth is that we had a well recognized test for granting a preliminary injunction which was understood by the district courts of our circuit (the "traditional test"). A panel of our court decided a new "alternative test" should be adopted and reversed a district judge for using the traditional test. *Fennell v. Butler, supra*, 570 F.2d at 263. We now adopt a third test which seems to include most of the elements of both of the previously existing tests. Hopefully, since it is an *en banc* decision, it will at least give the district courts in this circuit a test that they can rely on.

& *Spencer Holdings, Ltd. v. Kleen-Rite, Inc.*, 479 F.Supp. 164, 168 (E.D.Mo.1979), *aff'd*, 624 F.2d 60 (8th Cir. 1980); *Walker v. Wegner*, 477 F.Supp. 648, 651 (S.D.1979); *Chromalloy American Corp. v. Sun Chemical Corp.*, 474 F.Supp. 1341, 1346 (E.D.Mo.1979), *aff'd*, 611 F.2d 240 (8th Cir. 1979); *Woida v. United States*, 446 F.Supp. 1377, 1383 (D.Minn.1978).