AMIGO GIFT ASSOCIATION, Robert L. Phillips, d/b/a R.L. Phillips & Associates, Herbert Lane, d/b/a Herbert Lane & Associates, Virginia Tonsing, d/b/a Tonsing Associates, Plaintiffs,

v.

EXECUTIVE PROPERTIES, LTD., Universal Properties, Inc., and Connecticut Mutual Life Insurance Company, Defendants.

No. 84–0007–CV–W–0–5.

United States District Court, W.D. Missouri, W.D.

April 20, 1984.

J. Daniel Stewart, Brown, Koralchik & Fingersh, Kansas City, Mo., Robert J. Vancrum, Robert K. Campbell, Overland Park, Kan., for plaintiffs.

Donald W. Giffin, Gail M. Schroeger, Spencer, Fane, Britt & Browne, Kansas City, Mo., for defendants.

## ORDER

SCOTT O. WRIGHT, District Judge.

This case is before the Court on transfer from the Honorable Ross T. Roberts for the purpose of conducting a hearing on plaintiffs' motion, pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, for a preliminary injunction. An evidentiary hearing was held on April 5, 1984, and at the close of plaintiffs' evidence, the defendants moved for summary denial of plaintiffs' request for preliminary injunctive relief. For the following reasons, the Court concludes that the plaintiffs have failed to meet their burden of demonstrating entitlement to a preliminary injunction. Accordingly, plaintiffs' motion for injunctive relief will be denied.

### I. *Plaintiffs' Claim for Injunctive Relief*

Plaintiff Amigo Gift Association (Amigo) is a Missouri not-for-profit corporation now located at Executive Park, a commercial and industrial park in Kansas City, Missouri. Amigo is a trade organization whose members engage in the sale of giftware and decorative accessories to retail dealers of such items. There are approximately 104 members of Amigo consisting of independent businessmen and manufacturer

representatives who sell their products to retailers.

Defendant Executive Properties, Ltd. (Executive Properties) is a Missouri limited partnership consisting of Universal Properties, Inc. (Universal), a Delaware corporation, as the general partner thereof, and Connecticut Mutual Life Insurance Company (Connecticut Mutual), a Connecticut corporation, as the limited partner thereof. Executive Properties owns and operates the building that houses the Amigo Gift Mart at Executive Park.

Plaintiffs' second amended complaint makes the following allegations and requests for relief. Amigo has agreed to lease from Universal an exhibition hall for two four-day periods per year beginning January 1, 1979. Section 10.12 of this lease provides in part that Amigo will not permit its members to participate or form in the future any competitive giftware marts within a radius of 75 miles of the current location for a period of ten years.

Amigo and Universal also have entered into a "Supplemental Agreement" by which Universal agreed to lease permanent showroom space in the building which would be leased to Amigo members through a form lease, entitled "Amigo Member Lease," for various terms of between three and ten years. Under the terms of this Agreement, Universal agreed to lease space in the Gift Mart exclusively to Amigo members; to expand the building as membership increased; to grant Amigo substantial control over the operation of the Gift Mart; and to pay $30,000 in buy-out of existing leases of Amigo members in other locations. Paragraph four of the Supplemental Agreement provides that each individual tenant is not to participate in any competing gift marts in the "Greater Kansas City Metropolitan Area" during the term of the lease.

Plaintiffs allege that the effect of variable expiration dates of the individual leases combined with the restrictive covenants prevents individual members, who are dependent on one another, from leaving their current location at Executive Park. Plaintiffs request the Court to declare the restrictive covenants invalid as unreasonable and unlawful restraints on trade (Counts I–III). In addition, plaintiffs request that the Court declare that the individual member leases which expired on December 31, 1983, and which were renewed for three-year terms be reformed and modified to a one-year term (Count IV). Plaintiffs request that the Court order the defendants to prepare an accounting of all operating costs charged to Amigo and its members (Count V). Plaintiffs also claim that the restrictive covenants are in violation of Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1 and 2), and request a preliminary and permanent injunction pursuant to 15 U.S.C. § 26 (Count VI). A hearing was held on April 5, 1984 pursuant to plaintiffs' request for preliminary injunction. The Court has reviewed the evidence in the form of testimony and exhibits presented at that hearing, and makes the following findings of fact.

Prior to 1977, Amigo's individual members had permanent showroom facilities in several locations. Amigo's leadership concluded, however, that Amigo members should continue all of their business in a single location. In 1974, Amigo entered into negotiations with Universal Properties (Executive Properties' predecessor in interest), for construction of a special-purpose gift mart at Executive Park. Universal agreed to construct a gift mart building specially designed to meet Amigo's specifications and to bear the necessary financial investment.

The individual leases have provided for staggered expiration dates so that all of the leases do not expire on a common termination date. The lease terms have generally varied between three to ten years, with a small number of leases for only one year.

Amigo's members each carry various lines of merchandise and together they offer a large selection of items. In order to offer their customers a broad selection of items, Amigo's members prefer to maintain their permanent showroom space together

in one location. Amigo believes that if its business operations were not together in one location, it would not be able to attract the number of customers now served with the broad selection of items sold by Amigo members.

Amigo presently occupies both the first and second floors of the Amigo Gift Mart and there is no other space available, either for individual members to expand their showrooms or to add new members to the Amigo Association. Amigo has been looking for other space for both its exhibition hall and permanent showroom facilities for over a year. Amigo contends that it has outgrown its present facilities and needs additional space for its individual members to expand and for adding new members who wish to join Amigo.

In November of 1983, the Board of Directors of Amigo decided that Amigo should take all steps necessary to move its existing location to a proposed new facility to be built at Executive Hills, located at 95th and Metcalf in Overland Park, Kansas, while continuing to honor all its obligations to pay rent on existing leases at Executive Park until the leases expired or to pay the owners a lump sum to buy out all existing leases of Amigo members. On December 2, 1983, the full membership of Amigo voted in favor of this proposed move. Subsequently, on December 19, 1983, Amigo signed a letter of intent with the developers of Executive Hills, and also on the same date the same parties entered into an extension agreement requiring Amigo's members to sign leases on or before April 22, 1984.

Executive Properties, however, has refused to permit Amigo and its members to continue to pay rent and buy out the existing leases. By letter dated December 21, 1983, Executive Properties indicated its intent to enforce the restrictive covenants in the various agreements.

The testimony of various Amigo members established that if Amigo is not permitted to transfer to Executive Hills, Amigo may lose substantial revenues as a result of its lost opportunity to expand. The

Amigo members testified that each individual Amigo member would lose business profits and moving allowances if not permitted to move to Executive Hills.

## II. Availability of Preliminary Injunctive Relief under 15 U.S.C. § 26

This Court has jurisdiction pursuant to 28 U.S.C. § 1337. According to 15 U.S.C. § 26, any person, firm, corporation or association may obtain preliminary injunctive relief against threatened loss or damage by a violation of the antitrust laws,

> when and under the same principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, under the rules governing such proceedings, and upon the execution of a proper bond against damages for an injunction improvidently granted and a showing that the danger of irreparable loss or damage is immediate a preliminary injunction may issue: ....

Id. In determining whether to issue a preliminary injunction under this section, "there is nothing exceptional by reason of the presence of antitrust elements; the normal principles of equity are applicable." Kay Instrument Sales Co. v. Haldex Aktiebolag, 296 F.Supp. 578, 579 (S.D.N.Y. 1968). In the Eighth Circuit,

> whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.

Dataphase Systems, Inc. v. C.L. Systems, Inc., 640 F.2d 109, 114 (8th Cir.1981). A reading of 15 U.S.C. § 26 reveals that a showing of immediate danger of irreparable loss or damage is necessary in order for the issuance of preliminary injunctive relief. This statutory requirement is consistent with the Dataphase analysis, as the Eighth Circuit has indicated that "under any test the movant is required to show the threat of irreparable harm." Dataphase,

*supra*, 640 F.2d at 114 n. 9. The absence of a finding of irreparable harm alone is sufficient ground for vacating a preliminary injunction. *Id.*

Injunctions are "extraordinary legal remedies and are granted sparingly and under strict rules for the protection of all parties." *Greater Iowa Corporation v. McClendon*, 378 F.2d 783, 799 (8th Cir. 1967). Whether or not an injunction is granted lies within the sound discretion of the trial court, and the denial of a request for preliminary injunction may be reversed only if the trial court abused its discretion or based its decision on an erroneous legal premise. *Rittmiller v. Blex Oil, Inc.*, 624 F.2d 857, 859 (8th Cir.1980).

After reviewing the evidence adduced at the hearing and the briefs submitted by the parties, the Court finds that Amigo has failed to meet the *Dataphase* standards. The burden is on the moving party to establish the prerequisites for injunctive relief, *United States v. Dorgan*, 522 F.2d 969, 973 (8th Cir.1975), and in the instant case, Amigo has failed to meet this burden.

### A. The Threat of Irreparable Harm to Amigo

Amigo argues that unless Executive Properties is enjoined from enforcing the restrictive covenants, Amigo's members will sustain substantial injury due to their inability to expand and attract a larger volume of business and because Amigo will be unable to meet the competition of other midwestern gift marts.

■ It is well settled, however, that monetary loss, even where substantial, does not by itself constitute irreparable harm. The Supreme Court has stated that the

"[k]ey word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and injury necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation,

weighs heavily against a claim of irreparable harm."

*Sampson v. Murray*, 415 U.S. 61, 94 S.Ct. 937, 953, 39 L.Ed.2d 166 (1974) *quoting Virginia Petroleum Jobbers Assn. v. FPC*, 259 F.2d 921, 925 (D.C.Cir.1958) (emphasis original). Monetary loss may constitute irreparable harm only where the movant's very existence is threatened, such as where an act threatens an ongoing business with destruction as opposed to mere disruption. *See John B. Hull, Inc. v. Waterbury Petroleum Products, Inc.*, 588 F.2d 24, 28–29 (2nd Cir.1978); *Corning S & L Assn. v. Federal Home Loan Bank Bd.*, 562 F.Supp. 279, 283 (E.D.Ark.1983).

■ There are, however, several types of harm which may be considered irreparable as a result of antitrust violations. The threat of irreparable harm may arise from the loss of goodwill, the disclosure of confidential business information, and the loss of business the monetary value of which would be impossible to calculate. *See Medtronic, Inc. v. Gibbons*, 684 F.2d 565, 567 (8th Cir.1982) (preliminary injunction properly issued which restrained defendant *from violating* restrictive covenant in employment contract). The threat of irreparable harm in an antitrust context may also exist if the movant cannot establish with reasonable certainty the damages suffered, or, assuming damages could be established, if the movant would be required to bring multiple suits in order to recover. *See Board of Regents v. N.C.A.A.*, 546 F.Supp. 1276, 1326 (W.D.Okla.1982), *modified*, 707 F.2d 1147 (10th Cir.1983), *cert. granted*, — U.S. ——, 104 S.Ct. 272, 78 L.Ed.2d 253 (1983).

■ The Court finds that in the instant case Amigo has not demonstrated that the continued operation of the restrictive covenants will cause it to suffer irreparable harm. Amigo presented no evidence in support of its argument that the operation of the covenants will threaten its business existence. On the contrary, the testimony of the Amigo members at the hearing established that the members previously have been quite successful in their business op-

erations at Executive Park, and no evidence was adduced indicating that Amigo's existing enterprise would be jeopardized if the injunction is not issued. Similarly, Amigo presented no evidence establishing that its members would suffer a loss of goodwill in the absence of injunctive relief. Although Amigo makes a passing comment in its post-trial brief on the subject of difficulty of measuring future losses, there was absolutely no evidence presented in support of this argument, and the Court cannot infer from the present record that Amigo could not establish its damages with reasonable certainty. *See Jack Kahn Music Co., Inc. v. Baldwin Piano & Organ Co.,* 604 F.2d 755 (2nd Cir.1979) (irreparable harm not present where there is no evidence on record in support of plaintiff's theory that damages were incalculable and goodwill would be lost).

In *Los Angeles Memorial Coliseum Commission v. National Football League,* 634 F.2d 1197 (9th Cir.1980), the Ninth Circuit reversed the district court's issuance of a preliminary injunction which enjoined the N.F.L. from enforcing a league rule requiring the approval of three-fourths of team owners before a league team could transfer its location. The plaintiff argued that without injunctive relief it would be unable to enter into a lease agreement, begin stadium renovations or obtain financing for renovations. The Ninth Circuit ruled that the plaintiff failed to make the requisite showing of irreparable harm, because all of plaintiff's allegations were merely monetary injuries which could be remedied by a damage award.

In the instant case, Amigo is subject to harm in two ways if the injunction is not issued. First, Amigo would be unable to meet the deadline for entering a new contract with Executive Hills. Second, Amigo will be prevented from expanding its operations. Amigo has presented no evidence, however, that the threatened harm is not completely compensable in damages. In an antitrust suit, the "availability of treble damage relief is an important consideration ... weighing against granting an interlocutory injunction." *Rittmiller v. Blex Oil,*

*Inc., supra,* 624 F.2d 857 n. 4. Accordingly, the Court finds that Amigo has failed to establish that there will be a threat of irreparable harm in the absence of injunctive relief.

## B. *The Remaining Dataphase Factors*

Initially, the Court must note that even if the remaining *Dataphase* factors were decidedly in favor of the plaintiffs, the plaintiffs nonetheless would not be entitled to injunctive relief due to the absence of irreparable harm. The plain language of 15 U.S.C. § 26 states that injunctive relief is appropriate under this section under the same conditions which justify injunctive relief in courts of equity "and a showing that the danger of irreparable loss or damage is immediate...." Equitable relief may be granted under § 16 only where there is no adequate remedy at law. *Weiss v. York Hospital,* 548 F.Supp. 1048, 1057 (M.D. Pa.1982). Under the *Dataphase* analysis, a party seeking a preliminary injunction is "required to show the threat of irreparable harm." *Dataphase, supra,* 640 F.2d at 114 n. 9. Although the absence of any evidence of irreparable harm in this case prevents the issuance of preliminary injunctive relief, the Court nonetheless draws the following conclusions regarding the remaining *Dataphase* factors.

Considering first the state of the balance between the threat of irreparable harm to Amigo and the injury that granting the injunction will inflict on Executive Properties, the Court notes again that there is no evidence of possible irreparable harm to Amigo which can serve to balance the injury Executive Properties will sustain should the injunction issue. Executive Properties argues that the injunction requested by Amigo would irrevocably alter the status quo by permitting Amigo to move its place of business immediately, contrary to the present lease obligations. Executive Properties further contends that the lease agreements with Amigo represent a commitment by Amigo to promote the financial success of the parties' joint venture, and that an alteration of these agreements

would result in substantial damage to Executive Properties. Specifically, Executive Properties points out that in reliance on Amigo's commitment to remain in the gift mart for a period of ten years, Executive Properties constructed the gift mart and exhibition hall specifically for Amigo, sustained substantial financial risk, and did not take advantage of other financial opportunities in order to promote the success of the Amigo gift mart and exhibition hall.

Accordingly, in light of the fact that Amigo has failed to demonstrate the threat of irreparable harm, and because Amigo is not seeking the mere preservation of the status quo but rather is asking the Court to drastically alter the status quo pending a resolution of the merits, the Court finds that the balance of the equities tips decidedly in favor of Executive Properties.

Considering next the probability that Amigo will succeed on the merits, if "the chance of irreparable injury to the movants should relief be denied is outweighed by the likely injury to other parties litigant should the injunction be granted, the moving party faces a heavy burden of demonstrating that he is likely to prevail on the merits." *Dataphase, supra,* 640 F.2d at 113. The Court has reviewed the substantive claims of Amigo, and concludes that Amigo has not satisfied its "heavy burden" of establishing a likelihood of success in this situation. Although Amigo has raised numerous and serious allegations of antitrust violations, the Court cannot conclude, for purposes of entering injunctive relief, that Amigo has demonstrated a sufficient probability that it will succeed on the merits.

Finally, Amigo asserts that the public interest in permitting Amigo's members to do business where they choose weighs in favor of the issuance of injunctive relief. While it is clear that there may be some public benefit derived from Amigo's transfer and expansion of its business operations, this consideration is not sufficient to support the issuance of a preliminary injunction in light of this Court's conclusions concerning the absence of evidence demonstrating a threat of irreparable harm to Amigo, the balance of the equities, and the probability that Amigo will succeed on the merits. Accordingly, it is hereby

ORDERED that plaintiffs' request for preliminary injunctive relief is denied. It is further

ORDERED that this case is transferred back to the Honorable Ross T. Roberts, Division O, for further proceedings.