**In re STEAKS TO GO, INC., Debtor.**

**STEAKS TO GO, INC., Plaintiff,**

v.

**STEAK–OUT FRANCHISING, INC., Defendant.**

**Bankruptcy No. 98–47323–172.
Adversary No. 98–4191–172.**

United States Bankruptcy Court,
E.D. Missouri,
Eastern Division.

Sept. 29, 1998.

Office of United States Trustee, Internal Revenue Service, Special Procedures Branch, District Counsel, IRS, St. Louis, MO, Department of Revenue, State of Missouri, Office of General Counsel, Jefferson City, MO.

Robert E. Eggmann, Copeland, Thompson & Farris, Clayton, MO, for Debtor.

Norman W. Pressman, Greensfelder, Hemker & Gale, Richard W. Engel, Armstrong, Teasdale, Schlafly & Davis, St. Louis, MO, Timothy J. McGaughey, Harkleroad & Hermance, P.C., Atlanta, GA.

## *ORDER*

JAMES J. BARTA, Chief Judge.

This Order concerns the motion of Steaks To Go, Inc. ("Debtor") for a preliminary injunction against Steak–Out Franchising, Inc. ("Franchisor"). The hearing on the contested motion was commenced on September 3, 1998 and concluded on September 4, 1998. By agreement, the hearing was consolidated with the trial on the Debtor's separate motion to reject certain Franchise Agreements. A separate Order has been entered in that matter granting the Debtor's motion and re-

jecting three Franchise Agreements between the Debtor and the Franchisor.

This is a core proceeding pursuant to Section 157(b)(2)(A)(O) of Title 28 of the United States Code. The Court has jurisdiction over the parties and this matter pursuant to 28 U.S.C. Sections 151, 157 and 1334, and Rule 9.01 of the Local Rules of the United States District Court for the Eastern District of Missouri.

At the consolidated hearing, the Debtor and the Franchisor presented testimony, exhibits and oral argument in support of their respective positions. The following findings of fact and conclusions of law are based upon a consideration of the record as a whole.

Steak–Out Franchising, Inc. is a franchiser of steak, burger and chicken delivery restaurants. The Franchisor or its corporate predecessor, have operated such restaurants for approximately 12 years. Among other things, franchisees receive a four-volume Confidential Operations Manual that includes a Marketing Manual, Training Manual and Catering Manual. Franchisees are allowed to use Steak–Out's trademarks and symbols in the operation of the businesses.

The franchise agreement provides that the franchisee will, among other things, operate the franchised business in conformity with the uniform methods, standards and specifications as prescribed by the Franchisor. The agreements in this matter include further provisions concerning the standards of operation, advertising and marketing, the preparation of statements and records, and covenants not to engage in a competing business.

In mid–1992, Arthur Hirons and William McIntyre ("Officers") approached the Franchisor concerning the possibility of becoming Steak–Out franchisees. Between July, 1992 and November, 1994, these Officers entered into three franchise agreements on behalf of the Debtor, Steaks To Go, Inc. The three agreements, numbered 1701, 1703 and 1704 were to extend for a period of ten (10) years after execution by the Parties, unless previously terminated according to other provisions in the documents.

The Parties agreed that the Debtor twice defaulted under the terms of the agreements when it failed to pay sales taxes to the State of Missouri in 1997 and 1998. The Franchisor has argued that as a result, the agreements terminated prior to the commencement of this case.

The occurrence of any one or more of the following events shall constitute an event of default and grounds for termination of this Agreement by Franchisor: .... (v) if Franchise Owner receives from Franchisor two (2) or more notices to cure the same or similar defaults or violations of this Agreement during any twelve (12) month period, or six or more notices to cure any default or violation of this Agreement during the term hereof....

*Plaintiff's Exhibit 1, Franchise Agreements,* para. 13(v), pg. 27; *Plaintiff's Exhibits 2 and 3, Franchise Agreements,* para. 14(v), pg. 31.

By a separate Order, the Court determined that it is in the best interests of this estate to allow the Debtor in Possession to reject the Franchise Agreements as executory contracts under 11 U.S.C. § 365. However, the Court determined further that the covenants not to compete that are part of the rejected franchise agreements continue to be enforceable.

 As part of its adversary complaint, the Debtor has filed a motion for a preliminary injunction against the Franchisor requesting that the automatic stay be extended to the Debtor's officers. Commencement of a bankruptcy case operates as an automatic stay of actions against a debtor and of actions against property of the bankruptcy estate. 11 U.S.C. § 362. The automatic stay does not operate as to non-debtors. *In re Aboussie Brothers Construction Company,* 8 B.R. 302 (E.D.Mo.1981). Some Courts have recognized that the protections of the Bankruptcy Code, in certain limited circumstances, may be extended to non-debtors under 11 U.S.C. § 105. *In re River Family Farms, Inc.,* 85 B.R. 816 (Bankr.N.D.Iowa 1987). The Courts that have recognized this extension have generally based their determinations on the principles that have been

developed for the issuance of injunctive relief.

Under Fed.R.Civ.P. 65, a motion for a preliminary injunction generally involves the consideration of a four-part test. In *Dataphase Systems v. C.L. Systems. Inc.*, 640 F.2d 109, 113 (8th Cir.1981), the Court ruled that a party seeking a preliminary injunction must show (i) the threat of irreparable harm; (ii) that the balance of the harms caused by the grant, or failure to grant the injunction weighs in favor of the movant; (iii) the probability the movant will succeed on the merits; and (iv) the public interest.

Although the Debtor's prayer in the motion for a preliminary injunction requests a broad extension of the automatic stay to protect the Debtor's Officers, other language in the motion, and the evidence presented at the combined hearings, referred to specific non-bankruptcy actions of the Franchisor against the Officers. The Franchisor has commenced litigation in the United States District Court for the Northern District of Alabama seeking injunctive relief enjoining the Officers from operating the Debtor. The Debtor has argued that if the Officers are forced to defend the non-bankruptcy actions, or if they are prohibited from operating the Debtor, the Debtor's business will be shut down. However, the Court has determined that, based upon the record presented in this proceeding for a preliminary injunction, such a dramatic result is not inevitable if the Debtor's request here is not granted.

The Officers are not debtors in a bankruptcy case. They are, however, parties to certain non-bankruptcy proceedings where the type of relief requested here may be available to them directly in their capacity as litigants.

The Debtor has not shown that the harm to the Officers of the Debtor will outweigh the harm to the Franchisor if this preliminary injunction is not granted. The Court has determined that the Franchisor will suffer substantial irreparable harm if it is not allowed to continue the proceeding against the Officers in Alabama. The Alabama action seeks enforcement of covenants against the Officers. The record has suggested that the Officers and/or the Debtor may have used the knowledge and trade secrets obtained from the Franchisor in another venture. If the Franchisor is enjoined from proceeding against the officers, and if this use is eventually proven at trial, the harm to the Franchisor will be irreparable.

The record has not shown that either the Debtor or the Debtor's Officers are likely to prevail on the merits. The issues suggested in the non-bankruptcy proceedings are potentially complex and may involve extensive fact determinations.

Similarly, the record has not shown that the public interest will be served by granting the Debtor's request for an injunction in this matter. Rather, the public interest is best served by recognizing a rule of law that supports the enforceability of contracts that are determined to be valid.

A review of the Schedules in the Bankruptcy file has revealed that as of the commencement of the case, the Debtor's total liabilities were approximately $1,100,000.00, with assets valued at $65,000.00. All of the Debtor's assets appear to be encumbered by liens. Approximately $100,000.00 is owed for unpaid taxes. As noted previously, the Debtor has reported a profit from its business operations in only one of the last six years. Based on the information presented to the Court, it appears likely that a successful reorganization of the Debtor will be difficult.

For these reasons, the Court has determined that the Debtor has failed to establish the criteria required for issuance of a preliminary injunction under Rule 65, Federal Rules of Civil Procedure. A review of the record in the Bankruptcy case has failed to suggest any other equitable basis for entry of injunctive relief under 11 U.S.C. § 105.

**IT IS ORDERED** that the Debtor's motion to extend the stay to the Debtor's Officers, Arthur Hirons and William McIntyre, is **DENIED;** and that all other requests in this matter are **DENIED;** and that this matter shall remain on the Court's calendar as a pretrial hearing on *October 21, 1998 at 10:00 a.m. Bankruptcy Court No. 1, One Metro-*

*politan Square, 211 North Broadway, 7th Floor, St. Louis, Missouri.*