Kathryn JOHNSON, et al., Petitioners,

v.

Joan Anderson GROWE, Secretary of State, et al., Respondents.

No. 49230.

Supreme Court of Minnesota.

Jan. 25, 1980.

O'Connor & Hannan and Joe A. Walters, Minneapolis, for petitioners.

Warren Spannaus, Atty. Gen., Richard B. Allyn, Sol. Gen., Robert C. Hentges, Sp. Asst. Atty. Gen., Bryon E. Starns, Jr., Deputy Atty. Gen., St. Paul, William B. Ran-

---

dall, County Atty., and Thomas M. Quayle, Asst. County Atty., St. Paul, for respondents.

PER CURIAM.

This proceeding was brought on August 8, 1978, by petitioners Kathryn Johnson and Robert Short invoking the original jurisdiction of the supreme court under Minn.Stat. § 203A.18, subd. 1 (1978). The relief sought was an order directing the secretary of state and the county auditors of Minnesota to prepare separate ballots for the special primary election held on September 12, 1978, to fill the vacancy in the office of United States Senator occasioned by the death of Senator Hubert H. Humphrey on January 13, 1978. On August 16, 1978, we denied the petition by an order to which this opinion is addressed.

Petitioner Short was a Democratic-Farmer-Labor (DFL) Party candidate to fill the so-called Humphrey seat for a term expiring on January 3, 1983. The legislature on January 27, 1978, directed that a special primary be held to nominate Senator Humphrey's successor at the regular primary election preceding the November 1978 election. 1978 Minn.Laws ch. 456, § 1 (codified as Minn.Stat. § 202A.721 (1978)).

The regular primary on September 12, 1978, was a statewide election to nominate candidates for the office of United States Senator, held by the Honorable Wendell Anderson, for a term expiring January 3, 1985, in addition to nominating a governor and other constitutional and local officials.[1]

On June 9, 1978, the secretary of state, respondent Joan Growe, issued a memorandum to all county auditors of Minnesota directing among other things, that they prepare ballots for the September 12 primary in the following manner:

Elections to fill the U. S. Senate terms expiring January 3, 1983 and January 3, 1985 will be placed on the consolidated ballot for the State primary election September 12, 1978.

In addition she advised the auditors:

Any cross-over votes between the party tickets will make the entire ballot defective.

The DFL primary contest for the Humphrey seat between petitioner Short and his opponent, Congressman Donald Fraser, promised to be, and was, a hotly contested election. Had the ballots for the special and regular senatorial primaries been separate, it would have permitted the candidates to invite Independent-Republican (IR) voters to enter the special DFL senatorial primary without forfeiting their right to vote in the regular IR primary for all of the other partisan offices.

The issue before us, then, was whether Minn.Stat. § 202A.62, subd. 4 (1978) required separate ballots for the special and regular primaries on September 12, 1978 or whether Minn.Stat. § 203A.41, subd. 3 (1978) required the special and regular primary ballots to be consolidated, thus preventing the cross-over voting prohibited by Minn.Stat. § 203A.23, subd. 7 (1978).[2] We held that respondent Growe was correct in directing the county auditors to consolidate the ballots.[3]

At the outset, we emphasize that the provisions of the special election statutes must be read in the context of broad principles which govern the process of selecting partisan candidates in Minnesota. This is a formidable undertaking since the wording of the statutes does not make legislative intent clear. Nevertheless, we are satisfied that throughout the history of legislation which abolished nominations for public office by party conventions and replaced

1. The nomination and election of two United States Senators at the same time was unprecedented in this state and is not likely to reoccur.

2. Minn.Stat. § 203A.23, subd. 7 (1978) states in part: "Below the party name shall be printed

the words, 'You cannot split your ballot. If you vote for candidates of more than one party, your ballot will be rejected.' "

3. Petitioner Short won the DFL nomination but was defeated in the general election.

them with partisan primaries, there has been a consistent thread. Within practical limits primaries essentially serve only the purpose of permitting members of a particular political organization to choose their own candidates for the general election, free as far as possible from intrusion, interference, or meddling by members of competing parties. That objective is not advanced by permitting cross-over voting in the circumstances of this election. No reason occurs to us why the legislature might have intended a result which subverts the principles underlying the goals of partisan primaries.

■ The legislative philosophy which prompted the adoption of our primary laws is set forth in *Touhey v. Donovan*, 259 Minn. 63, 65, 105 N.W.2d 849, 850 (1960). There, in sustaining the prohibition against cross-over voting in primary elections, we cited *Sawyer v. Frankson*, 134 Minn. 258, 259, 159 N.W. 1, 1 (1916) as follows:

The primary election takes the place of the party caucus and party convention. A voter cannot participate in the selection of the candidates of more than one party or of a party with which he does not affiliate. The primary election is in effect a separate primary for each party. Party voters express their choice on separate party ballots. The statute regulates the method of selection but the primary is essentially a party primary. * * * Voters are concerned with the result of the primary only as it affects the nominee of the party with which they affiliate and not as it affects the nominee of another party.

With this background in mind we examine the statutes which deal with special elections. Minn.Stat. § 202A.62, subd. 4 (1978), on which petitioners rely, is listed with other sections under the heading "Special Elections" and provides as follows:

*Vacancies filled at special or other elections, manner.* Two or more vacancies may be filled at the same election and candidates therefore may be nominated at the same primary. Any special election or special primary held pursuant to sections 202A.61 to 202A.71 may be held on the same day as any other election or primary, using the same polling places and election officials. Separate ballots and ballot boxes shall be used, except where voting machines are used, in which case, it shall be treated as a separate election.

Minn.Stat. § 203A.41, subd. 3 (1978), on which respondents rely, is listed under the heading "Special Election Ballot" and provides:

*Ballots, use of regular ballots.* In any case where candidates are to be voted for under sections 202A.61 to 202A.71 on the general election day or are to be nominated on the regular primary election day, as the case may be, and where the canvass of the returns is to be made by the regular county canvassing board, as provided in section 202A.69, and where the ballots for the general election or primary have not been printed when the names of the candidates under sections 202A.61 to 202A.71 have been finally determined, the county auditor shall place the names of the candidates upon the regular ballots used for like offices at the general election or primary, designating the office to be filled in the same manner as provided in subdivision 2 for special ballots.

Minn.Stat. § 202A.71 (1978) provides:

Except as provided in sections 202A.61 to 202A.71 all of the provisions of the Minnesota election law are applicable to election (sic) held to fill vacancies, so far as practicable.

Finally, Minn.Stat. § 202A.721, subd. 7 (1978), enacted on January 27, 1978, for the express purpose of electing a successor to the late Senator Humphrey, provided for a special primary election to be held at the regular primary preceding the November election. Subdivision 12 of this section reads as follows:

Except as otherwise provided in this section, all of the provisions of this chapter that apply generally to other special elections apply to a special election held pursuant to this section.

Petitioners argue that separate ballots for special elections to fill vacancies are mandated by § 202A.62, subd. 4, and that the consolidated ballots referred to in § 203A.41, subd. 3, are only permitted where Minn.Stat. §§ 202A.61–.71 (1978) apply. Since 1978 Minn.Laws ch. 456, which governs the Humphrey vacancy, is not part of those sections but is numbered § 202A.721, petitioners contend that consolidated ballots are not authorized.

There are two answers to this contention —first, § 202A.62, subd. 4, is also restricted expressly to §§ 202A.61–.71; and second, § 202A.721, which was enacted in 1978 and changes the United States Senate vacancy election from a general to special one, incorporates by reference that part of §§ 202A.61–.71 which is not inconsistent with its own provisions. Section 203A.41, subd. 3, is itself incorporated by reference into § 202A.71 as one "of the provisions of the Minnesota election law" and nothing in § 202A.721 expressly precludes its application.

More important is the history of §§ 202A.62, subd. 4; and 203A.41, subd. 3, in juxtaposition to one another. In other versions, both were part of the same chapter from 1929 until 1975 when a fourth codification of the special election laws moved what is now § 203A.41 into a separate chapter dealing exclusively with election ballot provisions.[4]

The special election laws since 1919 have contained a provision incorporating all of the consistent Minnesota election laws as far as practicable. That section is now labeled 202A.71 and is expressly included in both §§ 202A.62, subd. 4, and 203A.41, subd. 3. It is also included in § 202A.721 where all of the consistent special election laws are now made applicable to the United States Senate vacancy.

The realigning of coded statute numbers into election laws and ballot laws by the revisor of statutes is construed by petitioner Short as evidence of legislative intent to eliminate § 203A.41, subd. 3, as an election law provision included in § 202A.71 and thereby to confer explicit preference on § 202A.62, subd. 4. He also defines a special primary as one held separately from— rather than part of—a regular primary, even though it may be held on the same day.

We are not persuaded by these arguments. Section 203A.41, subd. 3, clearly refers to § 202A.71; and a special primary is defined in terms of purpose rather than procedure by Minn.Stat. § 200.02, subds. 5, 6 (1978):

Subd. 5. * * * The words "special election" mean an election held for a special purpose.

Subd. 6. * * * The words "special primary" or "special primary election" mean a primary election held to select the

---

4. The four codifications which have included the substance of these provisions are as follows:

| | § 202A.62, subd. 4 | § 203A.41, subd. 3 |
|---|---|---|
| 1927 Mason's Minn. Stat. (1940 Supp.); 1929 Minn. Laws ch. 297, §§ 2, 8; (repealed 1939). | § 270–2 | § 270–8 |
| 1927 Mason's Minn. Stat. (1940 Supp.); 1939 Minn. Laws ch. 345, pt. 6, ch. 2, §§ 3, 9. | § 601–6(2)b | § 601–6(2)h |
| Minn. Stat. (1961); 1959 Minn. Laws ch. 675, art. IV, §§ 45, subd. 4; 51, subd. 3. | § 203.45, subd. 4 | § 203.51, subd. 3 |
| Minn. Stat. (1976); 1975 Minn. Laws ch. 5, §§ 30, subd. 4; 59, subd. 3. | § 202A.62, subd. 4 | § 203A.41, subd. 3 |

Chapter 202A covers caucuses, conventions, elections, and canvasses; Chapter 203A covers preparation of ballots.

nominees for the offices to be filled at a special election.

All of the codifications prior to 1975 included the separate ballot requirement (now § 202A.62, subd. 4) and the form for special election ballots (now § 203A.41) in one statute and were not inconsistent. The separate ballot requirement was always subject to the exception permitting a consolidated ballot (now § 203A.41, subd. 3).[5] Absent a clear expression of an intention to change the substance and effect of § 203A.41, subd. 3, we regard its 1975 move by the revisor as part of a reasonable general division between election procedures and election ballots.

Finally, we find merit in the distinctions drawn by respondents between the occasions for the two statutes here for consideration. Section 203A.41, subd. 3, applies only to ballots to be used in special general or special primary elections held on the regular day set for a general or primary election, where all statewide elections are canvassed by the regular canvassing board, and then only if the names of candidates for the regular election have not already been printed. Section 202A.721 meets all of these requirements.[6]

On the other hand, under § 202A.62, subd. 4, where the special election is to be held on the same day as any other election but the special election will not be canvassed by the regular canvassing board, or is too late to add the names of special election candidates to the regular election ballot, separate ballots are required. That statute would apply to a special election conducted in one area of a county or district and not in others, or to a statewide election where ballots are separately canvassed or printed, so that a consolidated ballot would be confusing and impractical.

It should also be noted that the special election laws, §§ 202A.61–.71, and their predecessors, have always applied only to the election of Representatives in Congress and members of the state legislature.[7] A United States Senate vacancy was always covered by a separate provision requiring that it be filled at a general election.[8]

---

5. See footnote 4 supra.

6. Minn.Stat. § 202A.721 (1978) provides in part as follows:

   Subd. 6. *Special election required, exception; when held.* Every vacancy shall be filled for the remainder of the term by a special election held pursuant to this subdivision; except that no special election shall be held in the year before the term expires.

   The special election shall be held at the next November election if the vacancy occurs at least six weeks before the regular primary preceding that election. If the vacancy occurs less than six weeks before the regular primary preceding the next November election, the special election shall be held at the second November election after the vacancy occurs.

   Subd. 7. *Special primary; when held.* A special primary shall be held at the regular primary preceding the November election at which the special election is held.

   \*   \*   \*   \*   \*   \*

   Subd. 9. *Filing by candidates.* The time for filing of affidavits and nominating petitions for candidates to fill a vacancy at a special election shall open six weeks before the special primary or on the day the secretary of state issues notice of the special election, whichever occurs later. Filings shall close four weeks before the special primary.

   Section 202A.69, subd. 2, requires that a special primary or special election held on the regular primary or general election day, respectively, must be canvassed by the county board at the regular meeting.

   As to the time for adding names to the ballot, the four weeks between the closing of filings and the date of the primary should be sufficient.

7. Prior to 1959, the special election laws also applied to "any other elective public office the filing of which is not otherwise provided for." 1939 Minn.Laws ch. 345, pt. 6, ch. 2, § 2. The United States Senate vacancy was "otherwise provided for." See note 8 infra.

8. The first United States Senate vacancy law was enacted in April 1913 (1913 Minn.Laws ch. 520, § 8), in anticipation of the effective date of the Seventeenth Amendment of the United States Constitution, which provides in part:

   When vacancies happen in the representation of any State in the Senate, the executive authority of such State shall issue writs of election to fill such vacancies: *Provided,* That the legislature of any State may empower the executive thereof to make temporary appointments until the people fill the vacancies by election as the legislature may direct.

   The vacancy law was part of a new method to nominate and select United States Senators,

Since the new Senate vacancy statute now also requires a special election, all consistent portions of §§ 202A.61–.71 now apply to it as well, including the special election ballot provisions in § 203A.41.

We are persuaded that the statutes as construed preserve the fundamental purposes of party primaries and further the principle that cross-over voting is contrary to public policy. The petition to require separate ballots at the September 12, 1978, special primary has therefore been denied.

SHERAN, C. J., took no part in the consideration or decision of this case.

and was separate from the special election laws, Gen.Stat.Minn. §§ 305–511 (1913). In 1939 it was placed at the beginning of the

special election laws, and in 1959 at the end, where it remains. (Minn.Stat. § 202A.721 (1978).)