**Kurt M. ANDERSON, on behalf of himself and all others similarly situated, Plaintiff,**

**v.**

**Joan GROWE, in her official capacity as Secretary of State of the State of Minnesota, Defendant.**

**No. Civ. 4–82–1173.**

United States District Court,
D. Minnesota,
Fourth Division.

Sept. 3, 1982.

As Modified Sept. 24, 1982.

Kurt M. Anderson, Willmar, Minn., for plaintiff.

Warren R. Spannaus, Atty. Gen., State of Minn., and Kent G. Harbison, Asst. Atty. Gen., St. Paul, Minn., for defendant.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on plaintiff's motion for a temporary restraining order or a preliminary injunction. The Court held a combined hearing on those motions on September 2, 1982. Plaintiff seeks an order enjoining the Minnesota Sec-

retary of State from conducting the September 14, 1982, Minnesota primary election unless she obtains from each voter a statement, made under penalty of perjury, that the voter will vote only in the primary of the party which he or she "support[s] or belong[s] to" and will not "cross over" and vote in the other party's primary. The plaintiff contends that the "open" feature of the Minnesota primary system, with respect to contested primaries for Democratic Farmer-Labor candidates, violates his first amendment right to freedom of political association. Based upon the record before the Court at this time, and upon the standards for issuance of a preliminary injunction, the Court concludes that plaintiff is not entitled to the preliminary relief he seeks, and that the primary election should proceed at the time and in the manner scheduled. The Court, therefore, denies the plaintiff's motion for a temporary restraining order or a preliminary injunction.

FACTS

Minnesota has an "open" primary system. *See* Minn.Stat. § 204D.08. Any qualified voter is allowed to vote in the primary of either political party without designating his or her party affiliation or preference. For example, a member of the Minnesota Independent Republican (IR) Party or a person with no party affiliation may "cross

over" and vote in the primary of the Minnesota Democratic Farmer-Labor (DFL) Party.[1]

The plaintiff, an adherent of the DFL Party, alleges that, in the past, close election contests in primaries have been decided by the ballots of cross-over voters. The plaintiff further alleges that the National Rifle Association has overtly urged its members to cross over in the upcoming Minnesota primary election for the purpose of defeating the DFL convention-endorsed candidate for governor.

Relying on the United States Supreme Court's recent decision in *Democratic Party v. Wisconsin ex rel. LaFollette*, 450 U.S. 107, 101 S.Ct. 1010, 67 L.Ed.2d 82 (1981), the plaintiff contends that his first amendment right to freedom of political association is in danger of being infringed by cross-over voting in the upcoming primary. To prevent this threatened injury, the plaintiff seeks an order requiring the Secretary of State to notify each voter in the Minnesota primary that cross-over voting is not permitted and to obtain from each voter a statement, made under penalty of perjury, that the voter will vote only in the primary of the party which he or she "support[s] or belong[s] to."[2] The plaintiff also asks the Court to order that all executed voter state-

---

1. Voters receive primary ballots with the names of the candidates arranged in columns according to party affiliation. Once the voter has chosen the party's primary in which he or she wishes to participate, he or she may vote only for candidates of that party. If the voter votes for candidates of more than one party, the entire ballot is voided. Minn.Stat. § 204D.08(4).

2. The plaintiff's entire proposed notice to voters and voter statement reads:

NOTICE TO ALL PRIMARY ELECTION VOTERS

The purpose of a primary election is to choose which candidates will represent each party in the November general election. "Crossover voting," or voting in the primary of a party which you do not support or belong to, is a violation of your fellow citizens' rights to freely choose their candidates, and is not permitted. In order to qualify to vote in the September 14, 1982, primary election, you must read and sign the statement below.

VOTER STATEMENT

I hereby declare under penalty of perjury, under the authority of Title 28 of United States Code, Section 1746, that I will vote in the September 14, 1982, primary, only in the primary of the party which I support or belong to; that I will not "cross over" and vote in the primary of a party which I do not support or belong to; that I will vote in the Democratic-Farmer-Labor Party primary only if I support or belong to that party; that I will vote in the Independent-Republican primary only if I support or belong to that party.

I hereby certify under penalty of perjury that the foregoing is true and correct.

Executed on September 14, 1982.

Signed: _____

Note: Nothing in this Notice or Statement prevents you from voting for whomever you wish in the primary of the party which you belong to or support, or from voting for whomever you wish in the November general election.

ments be kept on file with the Secretary of State for a minimum of two years.

DISCUSSION

## A. Standing

■ A necessary threshold question is whether the plaintiff has standing to bring this action. Under the Supreme Court's formulation of standing requirements in *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978), "[t]he essence of the standing inquiry is whether the parties seeking to invoke the court's jurisdiction have 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.'" *Id.* at 72, 98 S.Ct. at 2629, *quoting Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). The "personal stake" requirement involves both "distinct and palpable injury to the plaintiff" and a "fairly traceable causal connection between the claimed injury and the challenged conduct." *Duke Power Co.*, 438 U.S. at 72, 98 S.Ct. at 2629.

■ The Court believes that the plaintiff has standing for the purpose of this motion.[3] The plaintiff is a member of the DFL Party who alleges that the results of the DFL primary may be distorted by cross-over voting. The Supreme Court has stated that "[a]ny interference with the freedom of a party is simultaneously an interference with the freedom of its adherents." *Democratic Party v. Wisconsin ex rel. LaFollette*, 450 U.S. 107, 122, 101 S.Ct. 1010, 1019, 67 L.Ed.2d 82 *quoting Sweezy v. New Hampshire*, 354 U.S. 234, 250, 77 S.Ct. 1203, 1211, 1 L.Ed.2d 1311 (1957). Thus, the plaintiff has standing to allege a threatened interference by non-DFL voters in the selection of DFL candidates.

## B. Merits

■ *Dataphase Systems Inc. v. C L Systems, Inc.*, 640 F.2d 109 (8th Cir. 1981) (en banc), sets out the test the Court should follow in deciding whether to grant a temporary restraining order or a preliminary injunction. The Court should consider:

(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.

*Id.* at 113.

### 1. Irreparable Harm

The exact nature of the threatened harm to the plaintiff has not been clearly established. The plaintiff alleges that his first amendment right to freedom of political association will be infringed if nonadherents to the DFL Party are allowed to participate in the selection of DFL candidates for elective office. But the plaintiff has not clearly demonstrated that he, individually, possesses any associational rights in this context which might be infringed by conducting the state primary as currently planned. The only case cited by the plaintiff is factually distinguishable from the situation at issue here. *See Part B.3 infra.* Even assuming, *arguendo*, that the plaintiff's associational rights are implicated, the plaintiff presumably would suffer an injury only if enough non-DFL voters voted in the DFL primary to produce a distortion in the results of that primary. Whether non-DFL voters will cross over in numbers large enough to distort the results of the DFL primary is, of course, purely speculative. For these reasons, the Court concludes that the threat of irreparable harm to the plaintiff lends only minimal support to plaintiff's motion for injunctive relief.

---

**3.** The defendant argues that this action should be dismissed under Federal Rule of Civil Procedure 19 because of the plaintiff's failure to join the DFL Party. The DFL is not an indispensable party under Rule 19. There is no reason why "complete relief cannot be accorded among those already parties" in the absence of the DFL. Fed.R.Civ.P. 19(a). Any relief the Court might grant in this action would not "as a practical matter impair or impede" the DFL's ability to protect any interest it might have in the subject of this lawsuit. *Id.*

## 2. Balance of Harms

In contrast to the minor threat of harm to the plaintiff, the State alleges that it will incur serious harm and inconvenience if the plaintiff's motion is granted. Among the problems the State alleges will occur if it is required to implement the plaintiff's requested relief are the following:

1) the inability to give notice to, or obtain voter statements from, those people voting by absentee ballot;

2) the need to retrain election judges and to hire additional judges;

3) the possibility of a discrepancy between the number of ballots cast and the number of voter statements obtained; and

4) the risk that voters will be confused, insulted, or intimidated by the voter statements and consequently decline to vote.

The Court finds that many of these problems are illusory.[4] Nevertheless, the Court cannot overlook the serious burden which ordering such a significant change in Minnesota's primary procedure at this late date would impose on the State. The Court is particularly concerned about the effect of requiring voters with no party affiliation to sign the proposed voter statement in order to be eligible to vote. It is entirely possible that large numbers of voters, taking their oath seriously, would refuse to vote rather than to commit possible perjury in stating their membership or adherence to a particular political party. The Court concludes that the balance of harm weighs against granting the plaintiff's motion.

## 3. Likelihood of Success on the Merits

The Court must also consider the plaintiff's likelihood of success on the merits. The plaintiff relies almost exclusively on *Democratic Party v. Wisconsin ex rel. LaFollette*, 450 U.S. 107, 101 S.Ct. 1010, 67 L.Ed.2d 82 (1981), in which the Supreme Court held that Wisconsin could not, by state law, compel the Democratic National Party to seat a delegation at its national convention that was chosen in a way that violated the rules of the Party. Under Wisconsin's presidential preference primary system, voters voted for the presidential candidate of their choice in the Democratic primary. This primary was open, meaning that members of other parties and independents could vote. The delegates to the Democratic National Convention were later chosen by caucuses. However, the delegates were bound to vote at the Democratic National Convention for the winner of the Democratic primary on the first ballot and subsequent ballots unless they were released by the candidate, or the candidate received fewer than one-third of the total votes cast on a ballot. This binding of delegates was inconsistent with the Democratic National Party's Rule 2A which stated: "Participation in the delegate selection process in primaries or caucuses shall be restricted to Democratic voters only who publicly declare their party preference and have that preference publicly recorded." Under National Party rules, the "delegate selection process" included any procedure by which delegates are bound to vote for the nomination of particular candidates. Since Wisconsin's delegates were bound by the result of a primary in which non-Democrats were allowed to vote, the National Party indicated that Wis-

---

**4.** The plaintiff stated during oral argument that, because of the time restrictions involved, his requested relief need not apply to absentee voters.

The only additional training of election judges that would be required is a simple instruction that all voters are required to sign a voter statement before receiving a ballot. This procedure would also avoid the supposed problem of dealing with a discrepancy between the number of ballots cast and the number of voter statements obtained.

Counsel for the State also suggested that the State would need to redesign and reprint primary ballots or to adjust the operation of voting machines in order to enforce the prohibition on cross-over voting. There would be no need to take such measures to restrict voters to voting for the candidates of the party to which they adhere. The plaintiff concedes that the voter statements are intended to be self-enforcing through impressing upon the conscience of the voter that cross-over voting is not permitted.

consin's delegates would not be seated at the convention.

The Wisconsin Attorney General brought suit against the National Party and the Democratic National Committee to force them to seat the state's delegation. The Wisconsin Supreme Court ruled that the state's system of selecting delegates was constitutional and binding on the Party.

On appeal, the United States Supreme Court reversed. The Court defined the question presented to be not whether a state can constitutionally conduct an open primary, but whether it can force a party's convention delegates to be bound by the results of that primary in violation of the party's rules. 450 U.S. at 120, 101 S.Ct. at 1018. The Court held that "a political party's choice among the various ways of determining the makeup of a State's delegation to the party's national convention is protected by the Constitution." 450 U.S. at 124, 101 S.Ct. at 1020. The first and fourteenth amendments give the party and its adherents "a constitutionally protected right of political association." *Id.* at 121, 101 S.Ct. at 1018, *quoting Cousins v. Wigoda,* 419 U.S. 477, 487, 95 S.Ct. 541, 547, 42 L.Ed.2d 595 (1975). The freedom of association "necessarily presupposes the freedom to identify the people who constitute the association, and to limit the association to those people only." 450 U.S. at 122, 101 S.Ct. at 1019.

*LaFollette* is factually distinguishable from the situation in this case. Here, there is no conflict between Minnesota's open primary law and any party rule. This is not a case where delegates to a party convention are bound by the results of an election in which nonadherents to the party's beliefs and principles were allowed to participate.

The Supreme Court specifically stated in *LaFollette* that it was not deciding whether a state may constitutionally hold an open primary. 450 U.S. at 120, 101 S.Ct. at 1018; *see also id.* at 121, 123 n.24, 101 S.Ct. at 1018, 1019 n.24. The plaintiff has been unable to cite any case in which *LaFollette* has been applied to circumstances similar to those at issue here. Nor has the plaintiff cited any case in which an open primary was success-

fully challenged. It is true that a state may lawfully take measures to guard against cross-over voting. *E.g., Rosario v. Rockefeller,* 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973); *Johnson v. Growe,* 289 N.W.2d 490 (Minn.1980). But the Court has been presented with no authority that a law which *permits* cross-over voting is unconstitutional.

### 4. *Public Interest*

Finally, the public interest is a factor which cuts both ways in this case. The public interest is not served by a primary system which permits cross-over voters to distort the results of a party's primary. *See Johnson v. Growe,* 289 N.W.2d 490, 492 (Minn.1980). But neither is the public interest served by the delay, confusion, and voter intimidation that would likely result from an order granting the plaintiff's requested relief.

Considering the burden on the State of implementing the plaintiff's proposed relief, and the absence of any clear threat of harm to the plaintiff, the Court finds that the plaintiff is not entitled to injunctive relief.

Accordingly, IT IS ORDERED that the plaintiff's motion for a temporary restraining order or a preliminary injunction is denied.

LET JUDGMENT BE ENTERED ACCORDINGLY.