## The NEBRASKA HEALTH CARE ASSOCIATION, INC., et al., Plaintiffs,

v.

## Gina DUNNING, Director of Nebraska Department of Public Welfare, et al., Defendants.

### No. CV82–L–472.

United States District Court,
D. Nebraska.

April 1, 1983.

Order on Bond and Amending
Preliminary Injunction April 22, 1983.

## MEMORANDUM

URBOM, Chief Judge.

Filing 21 is a motion for a temporary restraining order and filing 22 is a motion for preliminary injunction and request for oral testimony. Hearing was held today on both. I deem it appropriate to enter a preliminary injunction and the motion for a temporary restraining order, therefore, will be deemed moot. *Dataphase Systems v. C L Systems, Inc.*, 640 F.2d 109 (C.A. 8th Cir.1981), sets the factors for consideration in determining whether a preliminary injunction should be granted. They are (1) the threat of irreparable harm to the plaintiffs, (2) the balancing of harm to the plaintiffs and harm to the defendants, (3) probability that the plaintiffs will succeed on the merits, and (4) the public interests.

The medicaid program is for the purpose of enabling each state to furnish medical assistance to certain persons whose income and resources are insufficient to meet the costs of necessary medical care. The federal government funds a part of the program and each state which chooses to participate in the program funds a part. Nebraska has chosen to participate by the enactment of § 68–1018, R.R.S.Neb. (Reissue 1981). The Department of Health and Human Services on the part of the federal government supervises the program and the Department of Public Welfare on behalf of the State of Nebraska creates and implements a state plan. Among the medical services which are reimbursed under the medicaid program in Nebraska is long-term care services.

Tit. 42 U.S.C. § 1396a(13) declares in part the requirements which must be contained in a state plan in order for the state to participate. It says:

"[The state plan must] provide (A) for payment ... of the ... skilled nursing facility, and intermediate care facility services provided under the plan through the use of rates (determined in accordance with methods and standards developed by the State ...) which the State finds, and makes assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity, with applicable State and Federal laws, regulations, and quality and safety standards ..."

By § 9 of L.B. 942, the legislature of Nebraska has required that the director of the Nebraska Department of Public Welfare "impose a pro rata reduction of all allowable costs for optional services under the Medical Assistance program" whenever "at any point in the state fiscal year, Medical Assistance funds are being expended at a rate that would exceed funds available for Medical Assistance expenditures for the fiscal year." Under the Act the pro rata reduction is applied first to optional medicaid services and if that reduction reaches ten per cent, then all additional pro rata reductions are to be applied equally to all medicaid services.

On March 29, 1983, the defendant Gina Dunning, Director of the Department of Public Welfare, announced that effective April 1, 1983, payments for certain federally optional services, including intermediate care nursing services, would be reduced by approximately fourteen per cent and payments for mandatory services, such as hos-

pital and physician services, would be reduced by approximately four per cent. The motions are for an order which would halt the implementation of those announced reductions.

The threat of irreparable harm is genuine, because the reduction in payments, according to the evidence, is likely to result in a reduction of the quality of services to patients or an inability of the health care providers to continue to furnish the nature of services contemplated by the federal program. Although it is true that there may be a remedy through the state administrative and judicial systems for monetary reimbursement of monies not paid the providers, it seems to me that there is a distinct threat of a loss of more than mere reimbursement of costs. The federal program has been created to ensure the actual providing of medical care of a designated standard and if it is not provided when it is needed, the purpose of the program will have been frustrated, and delayed reimbursement will not dissolve the frustration or provide the services lost.

The harm to the plaintiffs/complainants in comparison with harm to the defendants is considerable. At most, the harm to the defendants will be monetary, and a bond can protect against that loss. No loss will be experienced by the defendants until sometime after May 1, 1983, because no amounts are to be paid to providers until then for services rendered in April.

The probability is that the plaintiffs will prevail on the merits. The federal statute requires that payment must be made through the use of rates which "are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable State and Federal laws ..." The evidence before the court is that a reduction in the rates of the magnitude contemplated to be effective April 1, 1983, until the end of June 1983 would result in rates below those adequate to meet the costs which must be incurred by efficiently and economically operated facilities in or-

der to provide such care and services. The plan to make the reduction, even though it be in strict accordance with the mandate of the legislature of the State of Nebraska, probably is contrary to federal law and must yield.

The State of Nebraska, of course, is not required to participate in the federal program, but if it does, it must meet the requirements of that program.

The interest of the public does not favor either side at this point. The public has a strong interest in providing health care for the poor and elderly recipients of medicaid assistance and has a strong interest in financial responsibility.

Given the consideration of all the foregoing, it appears to me that a preliminary injunction should issue in order to hold matters in abeyance until a trial on the merits can be held. Every effort will be made to have an early adjudication by a full trial.

A resolution of the bond requirement should be made at a later time, when information is more fully developed. No monies are to be paid out by the State in any event until after May 1, so a decision regarding the bond will be made by that time.

### PRELIMINARY INJUNCTION

For the reasons stated in the accompanying memorandum,

IT IS ORDERED:

1. That Gina Dunning, Director of Nebraska Department of Public Welfare; Kay Orr, Treasurer of the State of Nebraska; Clifton A. Sexton, Jr., Director of Nebraska Department of Administrative Services, and their agents, employees, and attorneys and those persons in active participation with them who receive actual notice of this order, hereby are enjoined until further order of this court from implementing Section 9 of L.B. 942 of the Second Session of the Eighty-Seventh Legislature of the State of Nebraska, 1982, now codified in § 68–721, R.R.S.Neb. (1982 Cum.Supp.); and

2. That a hearing on the determination of the need for and amount of a bond to

secure the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined will be held on April 22, 1983, at 12:00 noon.

## ORDER ON BOND AND AMENDING PRELIMINARY INJUNCTION

As a result of the hearing on April 22, 1983, I conclude that all parties will be fully protected by the requirements of this order.

IT IS ORDERED:

1. That the preliminary injunction of April 1, 1983, is altered to read as follows:

"That Gina Dunning, Director of Nebraska Department of Public Welfare; Kay Orr, Treasurer of the State of Nebraska; Clifton A. Sexton, Jr., Director of Nebraska Department of Administrative Services, and their agents, employees, and attorneys and those persons in active participation with them who receive actual notice of this order, hereby are enjoined from implementing with respect to skilled nursing facilities and intermediate care facilities Section 9 of L.B. 942 of the Second Session of the Eighty-Seventh Legislature of the State of Nebraska, 1982, now codified in § 68–721, R.R.S.Neb. (1982 Cum.Supp.), until further order of this court."

2. That if it ultimately is determined that the preliminary injunction of April 1, 1983, has been wrongfully issued, the persons against whom that injunction runs and their successors in office shall be entitled to withhold in two equal installments from medicaid payments made to any of the skilled nursing facilities or intermediate care facilities who are now or then will be members of the plaintiff association the actual damages and costs suffered by reason of such injunction, which amount shall be determined by the court after a hearing on the subject; and

3. That no bond need be filed by the plaintiffs.