600 F.Supp. 84 (1984)
NATIONAL FOOTBALL LEAGUE and St. Louis Football Cardinals, Inc., Plaintiffs,
v.
COUSIN HUGO'S, INC.; McBee & Bruno's, Inc.; Jerrald Guttmann; Michael Badalamenti; Frank & Frank, Inc.; Schmiezings, Inc.; and Taylayna's of South St. Louis, Inc., Defendants.
No. 84-2692C(5).
United States District Court, E.D. Missouri.
December 7, 1984.
Jim J. Shoemake, Mark H. Levison, Robert E. Wallace, Jr., St. Louis, Mo., John Vanderstar, Margaret Alexander, Washington, D.C., for plaintiffs.
Brainerd W. LaTourette III, St. Louis, Mo., Barry S. Ginsburg, Clayton, Mo., John *85 L. Sullivan, Dan J. Kazanas, Francis M. Nevins, St. Louis Univ. of Law, St. Louis, Mo., for defendants.

ORDER AND PRELIMINARY INJUNCTION
LIMBAUGH, District Judge.
At the instance of the plaintiffs, on November 19, 1984, the Court entered a temporary restraining order and an order to show cause. The temporary restraining order restrained defendants and their agents from intercepting from satellite, or from any other means, a transmission of a live telecast of the professional football game scheduled to be played in St. Louis, Missouri, on November 25, 1984, between the Cardinals and the Philadelphia Eagles, the performance of which game was to be telecast on November 25, 1984, by CBS Sports, Inc.
The temporary restraining order also ordered the defendants to show cause on November 29, 1984, why a preliminary injunction should not be granted restraining the defendants as prayed for by the plaintiffs in their complaint.
Hearing on that order to show cause was held November 19, and November 20, 1984, and the parties were granted until December 5, 1984, to file post-trial memorandum concerning the issues raised by the order to show cause only.
On November 30, 1984, before the taking of testimony the plaintiffs and defendant Cousin Hugo's, Inc., filed a consent judgment which was by the Court approved. At the same time, the plaintiffs and defendant Schmeizings, Inc., also filed a consent judgment which was by the Court approved. The case then preceded to hearing as to all other defendants not entering into consent judgments. All such defendants appeared by counsel.
Certain facts were stipulated to by the parties in writing, which stipulation is a part of the record and other facts were elicited by witnesses and documentary exhibits. The Court finds that the National Football League, NFL, is composed of twenty-eight member clubs, including plaintiff St. Louis Football Cardinals, Inc. Each of the five defendants remaining in the case who have not entered into a consent judgment, own and operate a restaurant and bar in the City of St. Louis. Each restaurant and bar is equipped with a satellite dish antenna capable of receiving private satellite transmissions. These defendants are McBee and Bruno's, Inc., known as Panama Red's, Jerrald Guttmann known as Guttmann's, Michael Badalamenti, known as Mr. B's, Frank and Frank, Inc., known as Sandrina's, and Talayna's of South St. Louis, Inc., known as Talayna's.
The NFL has the authority, under its constitution and bylaws to negotiate television contracts on behalf of the league and the member clubs and by contract, for several years has had football games broadcast live on television with the three major television networks. The NFL and its membership clubs receive from the networks substantial sums of money for the exclusive right to make live game telecasts. The current contracts expire at the end of the 1986 football season. One of the prime reasons for the NFL's ability to negotiate these contracts is the large number of fans who attend each game. If attendance at the NFL games dropped, the value of the television rights to the NFL would decline.
League television contracts provide that any home game which is sold out seventy-two hours in advance of kickoff will be televised in the home market. If the game is not sold out seventy-two hours in advance of kickoff, the game will not be televised live within a club's home territory, consisting of a seventy-five mile radius of the stadium and these games may not be shown without the consent of the participating clubs. Each bar and restaurant of the five defendants involved is located within seventy-five miles of Busch Stadium where the Cardinals play their home football games in St. Louis City.
These limitations on live showing of the football games are necessary to promote the economic interests of the plaintiffs and the distribution of their sports entertainment *86 product. Ordinarily, home game attendance suffers whenever games are televised in the local market. Ticket revenues generally suffer correspondingly.
The television process is initiated by network cameras and crews at the stadium capturing the video images and creating an audio commentary constituting the program. The combined signal so created is then transmitted to an earth station located in the vicinity of the stadium and from there to a satellite transponder. The satellite then transmits the signal to a network control point in New York City at which point there is an insertion of commercials and other network material. The resulting signal is then relayed to affiliated local broadcast stations at which time local commercials and station breaks are inserted. At that point, the telecast is then ready for and is broadcast to the public over the air. Although point to point transmissions are used on occasion, the general method of transmission is via satellite.
Signals from the satellite to the receiving earth station can be intercepted by a dish antenna in proper alignment with the satellite transponder. This signal, known as a downlink is transmitted in the C-band at a frequency of 3700 to 4200 megahertz. Although there was no authorization by plaintiffs to any defendant to show the game of November 4, 1984, between the Cardinals and the Los Angeles Rams, all five defendants through dish antenna, or other means, showed such game. Except for Guttmann's, each of defendants' establishments were open for business and were showing the Cardinal-Ram game to customers. That game was not a sell-out seventy-two hours prior to kickoff and had been blacked out in the St. Louis area by CBS, pursuant to the NFL contract with CBS. Gutman was not open for business, although there were a few employees with Gutman watching the game while Gutman was cleaning the bar. Three other people were upstairs in the residence over the restaurant who were also watching the game.
Sandrina's has a twenty-four inch RCA television set in the bar and has improved reception with a roof antenna. Sandrina's is able to receive the signal from a CBS affiliate station in Cape Girardeau, Missouri 120 miles away, with the use of the roof antenna. Sandrina's did, in fact, show the Cardinal-Ram game to its customers on November 4, 1984, but did so by intercepting the signal from the Cape Girardeau station as opposed to the interception of the satellite signal. The evidence is not clear as to whether the interception was made in the showing of the Rams game with the use of the dish or roof antenna.
The NFL has filed an application with the copyright office for registration of the October 21 and November 4, 1984 Cardinal games and on November 27, 1984, sent notice to defendants of potential infringement as to the remaining Cardinal home game to be played in St. Louis December 9, 1984.
Although there was no specific testimony adduced, the Court takes notice that there are two regular season games left to be played, one of which is to be played in St. Louis on December 9, 1984, in which the Cardinals will participate and the other of which is December 16, 1984, at which the Cardinals will be away from home. There are NFL playoff games after December 16, 1984, but the showing of these games is probably not in dispute. The next regular season of the NFL will not begin until August, 1985, with the televised showing of pre-season NFL games.
This Court has jurisdiction of this case pursuant to the provisions of 28 U.S.C. § 1331.
A preliminary injunction should not issue unless there is a probability that the moving party will succeed on the merits, and that there is a threat of irreparable harm to the moving party. In addition, the equities between the parties should be balanced and the public interest should be promoted before the injunction should issue. Dataphase Systems, Inc. v. C.L. Systems, Inc., 640 F.2d 109 (8th Cir.1981).
The Court finds that plaintiffs have a probability of succeeding on the merits of the case with respect to the concept of *87 anticipatory infringement of copyright at least as to some of the defendants. The provision involved is 17 U.S.C. § 411(b) reading as follows:
"(b) In the case of a work consisting of sounds, images, or both, the first fixation of which is made simultaneously with its transmission, the copyright owner may, either before or after such fixation takes place, institute an action for infringement under section 501, fully subject to the remedies provided by sections 502 through 506 and sections 509 and 510, if, in accordance with requirements that the Register of Copyrights shall prescribe by regulation, the copyright owner 
(1) serves notice upon the infringer, not less than ten or more than thirty days before such fixation, identifying the work and the specific time and source of its first transmission, and declaring an intention to secure copyright in the work; and
(2) makes registration for the work within three months after its first transmission."
The Court finds that notice of the potential infringement of the game of November 4, 1984 was sent within the proper time limits to the defendants and that proper notice was also sent of the potential infringement within the time limits as to the game of December 9, 1984. Although there is no evidence that actual registration for the copyright of the game of November 4, 1984, and the game of December 9, 1984, has been made, the act provides for a three-month period for the potential registration after the first transmission and that time limit has not expired. Plaintiffs have indicated that they do intend to secure copyright of these two games.
Section 605, formerly Section 605 of the Federal Communications Act of 1934 protects television communications from unauthorized reception, interception or publication except where the signal is transmitted "for the use of the general public". Although this point is not decided by this preliminary order, it appears that plaintiffs have a reasonable likelihood of prevailing. In making the foregoing findings, the Court reserves ruling on the effect of the interception of the signal by one or more of the parties from the CBS affiliated station in Cape Girardeau, Missouri located 120 miles from St. Louis. The finding that the plaintiffs may succeed on the merits has to do with the interception of the satellite signal by defendants.
Because of time constraints and the limited nature of the preliminary injunction, the Court does not detail the remaining items concerning the elements necessary to grant a preliminary injunction but does find that there is a threat of irreparable harm to plaintiffs if a preliminary injunction is not issued. In making these findings, the Court has balanced the equities between the parties and considered the promotion of the public interest.
Other cogent issues are raised in assertions made by all the parties and ruling on these points will be reserved for a final order on the merits.
IT IS THEREFORE ORDERED that defendants in the operation of their commercial establishments, the names of which are identified in this order, and any officer, agent, servant or employee thereof are hereby enjoined from intercepting from satellite, a transmission of the live telecast of the professional football game scheduled to be played between the Cardinals and the New York Giants, on December 9, 1984, the performance of which game is to be telecast on that day by CBS Sports, Inc. Although this order does not restrain defendants from intercepting said game transmission by means other than through satellite, should defendants elect to intercept by other means, the legality of such an interception may be ultimately determined when this case is decided on the merits.
IT IS FURTHER ORDERED that the motions to dismiss filed orally by defendants Jerrald Guttmann and Frank & Frank, Inc., will be decided with the case, on the merits.
*88 IT IS FINALLY ORDERED that this case is set for trial on the merits on April 15, 1985.