### In re ALLISON WAREHOUSE & TRANSFER, INC.

### RAZORBACK MOVING & STORAGE, INC., Plaintiff,

v.

### M. Randy RICE, Trustee on Behalf of the Bankruptcy Estate of Allison Warehouse & Transfer, Inc., Defendant.

**Bankruptcy No. 92–41787S.
Adv. No. 92–4143.**

United States Bankruptcy Court, E.D. Arkansas, W.D.

Sept. 16, 1992.

James Smith, Little Rock, Ark., for plaintiff.

Randy Rice, Little Rock, Ark., trustee.

Charles Baker, Little Rock, Ark., for trustee.

Jack Sims, Little Rock, Ark., for debtor.

## ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE is before the Court upon the Motion for Temporary Restraining Order, filed on September 4, 1992. This action regards a sale by the trustee of a particular asset of the debtor. The trustee noticed for sale an Arkansas intrastate motor carrier Certificate of Public Convenience and Necessity, No. M–2278 ("the Certificate"). Razorback Moving & Storage, Inc. ("Razorback") filed a complaint requesting that the Court (1) enjoin the trustee from reopening the bidding process relating to the sale of the Certificate and (2) confirm the sale at which Razorback placed the highest bid. Razorback's argument is premised solely upon the state law establishing when an auction sale is final. Razorback asserts that since under state law the sale was final, the sale was final in the bankruptcy context, even without the trustee's approval or the approval of this Court. Further, Razorback contends that it had no notice that the sale would not be final until such time as the trustee and/or the Court approved it.

. The facts, as presented to the Court, at the hearing held on September 10, 1992, are as follows. On August 14, 1992, the duly appointed chapter 7 trustee filed a motion to hire auctioneer, which motion was granted on August 18, 1992. On August 19, 1992, the trustee filed a "Motion for and Notice of Sale [sic] Personal Property Free and Clear of Liens," in which the trustee requested that the Court permit him to notice and hold a sale of property of the debtor at public auction. On Sunday, August 30, 1992, the *Arkansas Democrat–Gazette* published the public notice of the sale, which notice clearly stated: "This Sale Is Subject To The Approval Of The Trustee, M. Randy Rice." (Trustee's Exhibit 1.)

On September 2, 1992, the sale was held, at the inception of which the auctioneer announced that the sale was subject to the approval of the trustee and the Bankruptcy Court. Razorback's bid was the highest and a check in the amount of the bid was accepted by the auctioneer's clerk. After the bid, the auctioneer advised or reminded Razorback that the trustee must approve the sale. The representative of Razorback testified that this was the first time he was

advised that the trustee must approve the sale. He also stated that he did not know, at that time, the significance of the statement. The trustee was not present during this conversation with the auctioneer. Razorback contends that it was later told by the auctioneer that the trustee approved the sale.[1]

Within a day or few days thereafter, Razorback was advised that the trustee would not approve the sale and that a new sale would be held. Razorback then filed the complaint for injunctive relief and moved the Court for entry of a temporary restraining order. The motion for temporary restraining order requests that the trustee be "temporarily restrained from any action to sell Certificate No. M–2278," pending determination of the suit on the merits. That is, the trustee has indicated an intent to re-notice a sale of the certificate. Razorback wishes to halt any such action by the trustee.

■ In order to obtain a temporary restraining order, Razorback must demonstrate (1) the probability that plaintiff will succeed on the merits and (2) whether plaintiff will suffer irreparable harm if injunction is not granted; (3) whether other interested parties will be affected and the (4) public interest. *Dataphase Systems, Inc. v. CL Systems, Inc.*, 640 F.2d 109, 113, 114 (8th Cir.1981). Of lesser importance are the latter two factors. *Chicago Stadium Corporation v. Scallen*, 530 F.2d 204, 206 & n. 1 (8th Cir.1976). The Court does not reach these factors inasmuch as Razorback has failed to meet either of the first two criteria.

A. *Probability of Success on the Merits.*

Razorback argues that there is a strong likelihood of success on the merits inasmuch as, under state law, the sale was final at the auction when the "Certificate was 'hammered down'" and Razorback tendered a check to the auctioneer's clerk. There are two errors in the analysis. The first is one of law: Razorback ignores the impact of federal law in its reliance solely upon the state law of auctions. Secondly, Razorback has not demonstrated that there was a lack of notice of the terms of the sale, but has only proven that Razorback's agent was ignorant of the published terms.

■ The fact that the sale may have been final under state law does not make the sale final for bankruptcy purposes. There is pending a motion to approve the sale. Until such time as an Order is entered approving the sale, the sale is not final and the trustee is *not permitted* to execute documents turning title of assets over to buyers. *See In re Landscape Properties, Inc.*, 100 B.R. 445, 447 (Bankr. E.D.Ark.1988) ("Although both of the competing offers to the Trustee are denominated 'real estate contract' there simply is no contract without bankruptcy court approval."); *United States v. Eagle Investment Co. (In re Crosby)*, 109 B.R. 195 (Bankr.S.D.Miss.1989) (conveyance set aside because no authority was given by the court for the transfer). Further, the trustee has an obligation to the estate, the creditors, and this Court to examine the sale in order to ensure that the best offer has been presented.

Razorback argues that since, under state law, the auctioneer is an agent of the seller, the trustee is bound by the auctioneer's statement that the sale had been approved. The Court does not particularly credit Razorback's statement that the auctioneer in fact indicated that the trustee had approved the sale. Further, as discussed above, a statement which may be binding under state law, does not obviate the trustee's duties under the Bankruptcy Code. Further, the auctioneer, although approved, is certainly not the Court's agent. The fact that a regular public sale with respect to which only state law applies, might have been final, does not override the Bankruptcy Code nor the trustee's duties with regard to sales of estate property.

---

1. Apparently, Razorback's representative repeatedly asked both the auctioneer and the trustee whether the sale would be approved. The trustee repeatedly told Razorback that he, the trustee, would let Razorback know when a decision was reached.

The evidence clearly demonstrated that the terms of the sale had been published in accord with the Bankruptcy Code and due process. The specific restriction, that the sales were "subject to the approval of the trustee" was published in the *Arkansas Democrat–Gazette.* Further, when the sale was held, the auctioneer announced that the sale was subject to the approval of the trustee. Razorback's agent testified that he "heard" of the sale from his attorney. He did not see the notice in the newspaper, nor did he hear the auctioneer's statement that the sale would have to be approved at the inception of the auction. The trustee testified that he was present and heard Mr. Wooley, an auctioneer often used in bankruptcy sales, state that the trustee would have to approve all sales. The Court believes the trustee. The fact that Razorback's agent does not remember hearing the statement, or did not hear the statement, does not mean it was not made. It is clear from the evidence that there was in fact notice of the requirement that the sale be approved. Razorback's assertion that it was not actually aware of the requirement of approval does not counter the fact that fair notice of the specific term actually existed.

Razorback further asserts that the Court has already approved the sale. The Court cannot fathom the continued and argumentative assertions that the Court has approved the sale. No order has been entered approving the sale. The record is clear on that. Razorback also contends that the Order of August 18, 1992, permitting a particular auctioneer to be hired somehow constitutes approval of the sale. There is no factual or legal basis for such an assertion. The trustee was required to obtain Court approval before the auctioneer could be hired. 11 U.S.C. § 327. The Order simply grants the trustee's motion to hire an auctioneer and approves the terms and conditions of employment, as required by the Bankruptcy Code.[2]

### B. *Irreparable Harm*

■ Razorback asserts that it will be irreparably harmed if the trustee is permitted to take any action to conduct another sale of the certificate. The basis for this is the fact that Razorback was the highest bidder at the September 2, 1992, auction (not approved by the trustee). The fact that it has made an offer, however, is not grounds for Razorback to prohibit the trustee from performing his function in obtaining a better offer. The trustee has indicated his intent to go forward with another sale *at which Razorback may bid.* Razorback will yet have the opportunity to obtain the certificate. Indeed, Razorback rebutted its own assertions of irreparable injury by offering, in open court, to pay a higher price for the certificate. If Razorback is the highest bidder at the subsequent auction, this entire matter may be moot. The only evidence before the Court is that Razorback may have to pay more for the certificate than its bid on September 2, 1992. In light of the Bankruptcy Code requirement that the best price be obtained on behalf of the estate, this is not an injury redressable in this Court.

### C. *Conclusion*

Razorback ignores federal law which requires the trustee's and the Court's approval prior to a sale in bankruptcy becoming "final." Further, the evidence presented clearly demonstrated that the proper notice was in fact given. Accordingly, Razorback has failed to meet its burden of showing a probability of success on the merits. Secondly, there is no showing that Razorback will be irreparably injured if a temporary restraining order is not granted.

The trustee has indicated that he will not approve sale of the certificate to Razorback at the price bid on September 2, 1992. Accordingly, he will not be submitting an Order to the Court approving the sale. The Court does not determine *which* of any offers should be accepted. Upon submission of the proper documentation, the Court only approves or disapproves a par-

---

**2.** Indeed, the Court will have an opportunity to revisit this Order when the trustee submits an application to actually pay the auctioneer for his services.

ticular sale submitted. It is not for the Court to designate which offer should be accepted by the trustee. *Landscape,* 100 B.R. 445. The trustee indicated that there is a higher and/or better offer for the certificate. He appears to be performing his statutory function. When the trustee submits a particular sale at a particular price, the matter may be brought on for hearing. Until such time as the trustee presents the Court with the terms of a sale, it is unclear that there is even a justifiable issue for the Court.

The movant in this case has neither raised a substantial question, nor demonstrated that the equities are in his favor. *See Dataphase Systems,* 640 F.2d at 113. Accordingly, it is

ORDERED that the Motion for temporary restraining order, filed on September 4, 1992, is DENIED.

IT IS SO ORDERED.