# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1942

_____

| | | |
|---|---|---|
| Straights and Gays for Equality | * | |
| (SAGE); N.R. by Her Next Friend | * | |
| and Parent S.R.; H.W. by Her Next | * | |
| Friend and Parent M.W., | * | |
| | * | |
| Appellees, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | District of Minnesota. |
| | * | |
| Osseo Area Schools - District No. 279; | * | |
| Larry A. McGee, Member & | * | |
| Chairperson of the School Board of | * | |
| Osseo Schools - District 279, in his | * | |
| individual and official capacities; | * | |
| Dean G. Henke, Member & | * | |
| Vice Chairperson of the School | * | |
| Board of Osseo Area Schools - | * | |
| District 279, in his individual and | * | |
| official capacities; John L. Nelson, | * | |
| Member & Clerk of the School | * | |
| Board of Osseo Area Schools - | * | |
| District 279, in his individual and | * | |
| official capacities; Kim Green, | * | |
| Member & Treasurer of the School | * | |
| Board of Osseo Area Schools - | * | |
| District 279, in her individual and | * | |
| official capacities; Linda J. Etim, | * | |
| Member & Director of the School | * | |
| Board of Osseo Area Schools - | * | |
| District 279, in her individual and | * | |
| official capacities; Judith G. Peterzen, | * | |
| Member & Director of the School | * | |

Board of Osseo Area Schools -     *
District 279, in her individual and     *
official capacities; John O'Sulllivan, Jr.,     *
Superintendent of Osseo Area Schools -     *
District 279, in his individual and     *
official capacities; Wendy Loberg,     *
Principal of Maple Grove Senior     *
High School, in her individual and     *
official capacities; Dr. James L. Smith,     *
former Interim Superintendent of     *
Osseo Area Schools - District 279,     *
in his individual capacity; Maple     *
Grove Senior High School,     *
    *
       Appellants.     *

_____

Submitted: October 16, 2006
Filed: December 22, 2006

_____

Before SMITH, BOWMAN, and COLLOTON, Circuit Judges.

_____

SMITH, Circuit Judge.

The Osseo Area School District ("School District"), Maple Grove Senior High School ("MGSH"), and various school board members and school staff (collectively referred to as "appellants") appeal from an order of the district court granting the Straights and Gays for Equality ("SAGE"), N.R., and H.W.'s (collectively referred to as "appellees") motion for a preliminary injunction. The district court[1] granted appellees' motion for a preliminary injunction on their Equal Access Act (EAA) claim and ordered appellants to grant SAGE the same access for meetings, avenues of

_____

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

-2-

communication, and other miscellaneous rights afforded to groups referred to as "curricular." We affirm.

## I. *Background*

SAGE, an unincorporated association of students enrolled at MGSH, was formed to "promote tolerance and respect for [MGSH] students and faculty through education and activities relevant to gay, lesbian, bisexual, and transgender ("GLBT") individuals and their allies." N.R. and H.W. are students at MGSH and members of SAGE.[2]

MGSH, a high school within the School District, recognizes approximately 60 student groups, including SAGE. MGSH classifies student groups as either "curricular" or "noncurricular" under the Student Group Framework ("Framework"). The Framework defines "curricular" groups as those "[r]elated to the school's curriculum" and sponsored by the school. Curricular groups are allowed to "communicate via PA [public address system], Yearbook, scrolling screen" and "use other avenues of communication." They may also participate in "[f]undraising or field trips at principal [sic] discretion." Groups classified as "curricular" include, *inter alia*, cheerleading and synchronized swimming.[3]

The Framework defines "noncurricular groups" as those "[n]ot related to the school's curriculum" and not sponsored by the school. The school limits noncurricular groups's communication avenues. They may only announce meetings by placing

---

[2]N.R. and H.W. graduated from MGSH in spring 2006.

[3]Other groups classified as "curricular" are: Student Government, which includes the Crimson Cabinet, Crimson Council, Diversity Council, Service Council, and Spirit Council; Asian Culture Leadership Group; Black Allies; Native American Group; Gays, Lesbians, Bisexuals, Transgender, Questioning and Allies; Students Against Destructive Decisions; National Honor Society; Dance Team; gymnastics; and track and field.

posters on a community bulletin board and outside their meeting places. They are prohibited from making announcements on the PA, in the yearbook, on the scrolling screen, or by other avenues of communication. They also may not fundraise or take field trips. The Framework classifies nine groups as "noncurricular," including SAGE.

Appellees filed suit against appellants seeking a preliminary injunction under 42 U.S.C. § 1983. Appellees contended that appellants were violating the EAA by affording certain noncurricular groups designated as curricular student groups, such as cheerleading and synchronized swimming, with greater access to school facilities and communication options than noncurricular groups such as SAGE.

The district court granted appellees' motion for a preliminary injunction, determining that (1) appellees were likely to prevail in their argument that, like SAGE, cheerleading and synchronized swimming are noncurriculum related groups but afforded greater rights than SAGE; (2) appellees were entitled to a presumption of irreparable harm; (3) the balance of harm favors granting injunctive relief; and (4) the public interest will be served by enforcing appellees' rights under the EAA.

II. *Discussion*

On appeal, appellants argue that the district court abused its discretion in issuing the preliminary injunction because the district court (1) failed to consider the physical education curriculum adopted by the school board in deciding that appellees were likely to succeed on the merits of their EAA claim and (2) erroneously found that appellees would suffer irreparable harm because appellees are not foreclosed from all avenues of communication.

On appeal from a district court's grant of a preliminary injunction, we review the district court's legal conclusions de novo and its ultimate determination to issue the injunction for an abuse of discretion. *McCreary County v. ACLU*, ___U.S.___, 125 S. Ct. 2722, 2737 (2005).

In determining whether to issue a preliminary injunction, the district court considers (1) the likelihood that the movant will succeed on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between the harm to the movant and the harm to the other party; and (4) the public interest. *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). The principal factors at issue in the present case are the likelihood of appellees' success on the merits and the threat of irreparable harm to appellees.

### A. *Likelihood of Success on the Merits on the EAA Claim*

The EAA prohibits public secondary schools with a "limited open forum" from discriminating against students desiring to hold meetings on the basis of political, religious, philosophical, or other content of the speech. *Bd. of Educ. of the Westside Cmty. Sch. v. Mergens*, 496 U.S. 226, 235 (1990) (citing 20 U.S.C. §§ 4071(a), (b)). A public secondary school creates a "limited open forum" whenever it "'grants an offering to or opportunity for one or more noncurriculum related student groups to meet on school premises during noninstructional time.'" *Id.* (quoting 20 U.S.C. § 4071(b)). Thus, a school's obligations under the EAA are "triggered" even if the school only permits one noncurriculum group to meet. Once triggered the EAA forbids a school from prohibiting other groups, based on the content of their speech, from having "equal access" to meet on school premises. *Id.* at 236.

A "curriculum related student group" is one that

> directly relates to a school's curriculum if the subject matter of the group is actually taught, or will soon be taught, in a regularly offered course; if the subject matter of the group concerns the body of courses as a whole; if participation in the group is required for a particular course; or if participation in the group results in academic credit.

*Id.* at 239–40. The circle of groups considered "curriculum related" has a relatively small circumference and does *not* include "anything remotely related to abstract

educational goals"; instead, the Court limited the definition of "curriculum related student group" to support "Congress's intent to provide a low threshold for triggering the Act's requirements." *Id*. at 244, 240.

For example, a French club is directly related to the school's curriculum if the school teaches French in a regularly offered course or plans to teach French in the foreseeable future. *Id*. at 240. Likewise, a student government organization is directly related to the curriculum if it addresses matters relating to the body of courses offered by the school. *Id*. Also, both band and choir directly relate to the school's curriculum if they are offered as part of the school's regular curriculum. *Id*. at 246.

In contrast, although the EAA does not define "noncurriculum related student group," the Supreme Court has interpreted the phrase broadly to mean "any student group that does not *directly* relate to the body of courses offered by the school." *Id*. at 239 (emphasis in original)."Whether a specific student group is a 'noncurriculum related student group' will [ ] depend on a particular school's curriculum, but such determinations [are] subject to factual findings well within the competence of trial courts to make." *Id*. at 240. Additionally, courts must look to the school's "actual practice rather than its stated policy" in determining whether a student group is noncurriculum related. *Id*. at 246.

For example, a scuba-diving group is not directly related to the school curriculum, even if swimming is taught as a physical education class, when scuba diving is not taught in any regularly offered course at the school and does not result in academic credit. *Id*. at 245. Also, a chess club is a "noncurriculum related group" when no class requires participation in the club and participation in the group does not result in extra credit for a class. *Id*. Finally, a student service organization that helps to enhance students' civic responsibilities to the community is not directly related to the curriculum where the subject matter of the group is not taught in a class. *Pope v. E. Brunswick Bd. of Educ.*, 12 F.3d 1244, 1253 (3d Cir. 1993) ("Here, the relevant

subject matter of one unit of Mr. Koenigsberg's History course is poverty and homelessness. The subject matter of the Key Club is *not* poverty and homelessness, but community-related service and fund-raising activities. The history course and the Key Club accordingly have different subject matter.") (emphasis in original).

Here, MGSH does not prohibit SAGE from meeting at the school or utilizing some avenues of communication; however, the issue is not whether SAGE has access to some avenues of communication but whether it has *equal* access to the same avenues of communication as other noncurriculum related groups. We hold that it does not.[4]

First, no regularly offered course at MGSH teaches or will teach the subject matter of cheerleading or synchronized swimming. With regard to cheerleading, the "subject matter" of cheerleading is dance, gymnastics, jumps, and stunts, which are performed for the purpose of creating team spirit at athletic contests. While the MGSH Registration Handbook does list "Body Control" as a "theme" for its physical education classes—which includes dance, gymnastics, and tumbling—none of the offered courses listed in the Handbook, as in *Pope*, actually teach all of the subject matter performed in cheerleading. Likewise, although synchronized swimming involves both swimming and gymnastics, which are listed under the "Body Control" theme and "Fitness" theme in the Handbook, it is not taught in a regularly offered course at MGSH.

---

[4]Appellants have not alleged that SAGE's meetings could "materially and substantially interfere with the orderly conduct of educational activities within the school" or interfere with MGSH's ability to maintain order and discipline at the school. *Mergens*, 496 U.S. at 241 (internal quotations and citation omitted). Therefore, our analysis is restricted to the issue of whether SAGE has equal access to the same avenues of communication as other noncurriculum related groups.

Second, cheerleading and synchronized swimming do not concern the body of courses as a whole. Unlike a student government organization, neither the cheerleading squad nor the synchronized swimming team address concerns or formulate proposals relating to the body of courses as a whole at MGSH.

Finally, participation in cheerleading or synchronized swimming does not result in academic credit and is not required for a particular course.

Because cheerleading and synchronized swimming, like SAGE, are noncurriculum related groups, SAGE is entitled to the same avenues of communication as those groups. Our conclusion that SAGE is likely to prevail on the merits of its EAA claim, however, does not mean that MGSH "can never close a limited open forum once such a forum has been created." *Pope*, 12 F.3d at 1254. MGSH is "free to wipe out all of its noncurriculum related student groups and totally close its forum." *Id*. Furthermore, our holding does not prevent MGSH from legitimately categorizing cheerleading, synchronized swimming, and any other athletic groups as "curriculum related" by granting physical education academic credit to students who participate in such groups.

## B. *Irreparable Harm*

SAGE is also entitled to a presumption of irreparable harm. The EAA protects free speech rights and expressive liberties. *Hsu v. Roslyn Union Free Sch. Dist. No. 3*, 85 F.3d 839, 872 (2d Cir. 1996). "'[T]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Id*. (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). "[T]he same presumption of irreparable harm arises in the case of violations of the Equal Access Act because it protects 'expressive liberties.'" *Colin v. Orange Unified Sch. Dist*., 83 F. Supp. 2d 1135, 1149 (C.D. Cal. 2000); *see also Boyd County High Sch. Gay Straight Alliance v. Bd. of Educ. of Boyd County*, 258 F. Supp. 2d 667, 692 (E.D. Ky. 2003) ("This

same presumption of irreparable harm has been applied in cases of violations of the Equal Access Act because it protects 'expressive liberties.'").

Here, although MGSH has afforded students the opportunity to hold SAGE meetings in school classrooms and place posters on a community bulletin board and outside the meeting place, they have not, like student members of cheerleading and synchronized swimming, been allowed to communicate via the PA, yearbook, and scrolling screen. Additionally, the students have been prohibited from holding fundraising events or having field trips. Therefore, the student members of SAGE are entitled to a presumption of irreparable harm, as they will not be able to exercise their rights absent a preliminary injunction.

### III. *Conclusion*

Accordingly, we affirm the district court's grant of a preliminary injunction.

_____