# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-3016
_____

George Wise; Matthew Pekar; Uta Meyer; David Martindale; Robert Walker

*Plaintiffs - Appellants*

v.

Department of Transportation, United States; Federal Highway Administration;
Arkansas Department of Transportation

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: September 26, 2019
Filed: December 6, 2019

_____

Before SMITH, Chief Judge, WOLLMAN and ERICKSON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

This action arises from the widening of Interstate Highway 630 from six to eight lanes from Baptist Hospital to University Avenue  (approximately 2.5 miles) within the City of Little Rock, Arkansas (the I-630 project).  George Wise and others filed suit against the U.S. Department of Transportation, the Federal Highway

Administration (FHWA), and the Arkansas Department of Transportation (Arkansas DOT), alleging violations of the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. § 4321 *et seq.*, and NEPA's implementing regulations, 40 C.F.R. §§ 1500-1508. Wise also filed a motion for a temporary restraining order, seeking to enjoin the defendants from working on the I-630 project. Wise appeals from the denial of injunctive relief, arguing that the district court[1] erred in determining that the I-630 project qualified for a categorical exclusion under 23 C.F.R. § 771.117(c)(22). We affirm.

## I. Background

NEPA requires federal agencies to prepare an environmental assessment or an environmental impact statement for "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). "NEPA itself does not mandate particular results, but simply prescribes the necessary process." Robertson v. Methow Valley Citizens Council, 490 U.S. 332, 350 (1989). Categories of actions "which do not individually or cumulatively have a significant effect on the human environment and which have been found to have no such effect" do not require an environmental assessment or an environmental impact statement. 40 C.F.R. § 1508.4; see Friends of Richards-Gebaur Airport v. FAA, 251 F.3d 1178, 1185-87 (8th Cir. 2001) (setting forth the regulatory background that allows agencies to "categorically exclude certain types of federal activities from [NEPA's] case-by-case environmental assessment review"). FHWA has identified certain actions that do not involve significant environmental impacts and thus qualify for categorical exclusion from NEPA's requirements. See 23 C.F.R. § 771.117. At issue here is the categorical exclusion for projects that take place "entirely within the existing operational right-of-way." See id. § 771.117(c)(22).

---

[1]The Honorable James M. Moody, Jr., United States District Judge for the Eastern District of Arkansas.

In October 2016, the defendants reported that the I-630 project qualified for a categorical exclusion from NEPA's environmental assessment or environmental impact statement requirements. The categorical exclusion report outlined the improvements proposed along I-630, including increasing the travel lanes from six to eight and replacing all bridges within the project's limits. The report noted that the "[e]xisting right of way width varies, ranging from 220 to 400 feet" and explained that the project did not require any "additional permanent right of way." Arkansas DOT already owned the land that would be used for the I-630 project.

Arkansas DOT issued a press release on July 13, 2018, stating that construction on the I-630 project would begin on Monday, July 16. Wise filed suit and moved for a temporary restraining order two days later. During a status conference held on Friday, July 19, 2018, Wise characterized the demolition of the Hughes Street Overpass as the harm that would be done "between now and Monday," when the hearing on Wise's motion for a temporary restraining order would be held. Wise asked the district court to disallow demolition of the overpass and immediately enjoin the defendants from working on the I-630 project. The district court declined to do so, and the Hughes Street Overpass was demolished that weekend.

Keli Wylie, the program administrator of Arkansas DOT's Connecting Arkansas Program, testified at the hearing on Wise's motion. She explained that the existing operational right-of-way included traffic lanes and clear zones, "which, in layman's terms, [are the areas] outside of the shoulder of the roadway[, and] . . . in this case it's 30 feet beyond the edge of the travel way." Wylie testified that the existing operational right-of-way was not limited to those areas, however, because it also included "mitigation areas, drainage areas, interchange ramps, anything that we maintain or use for transportation purposes." She explained that the right-of-way for the I-630 project was clear, but that Arkansas DOT would remove any other trees, if necessary, to complete the project. According to Wylie, the existing operational

right-of-way was "property line to property line"—*i.e.*, the entire 220- to 400-foot expanse owned by Arkansas DOT.

After reviewing the evidence, "particularly the testimony of Keli Wylie," the district court concluded that Wise had "failed to establish that any part of the I-630 project construction would go outside of the existing operational right-of-way" and that it was therefore reasonable for the defendants to conclude that the project qualified as a categorical exclusion under the regulation. D. Ct. Order of July 27, 2018, at 6. The district court thus denied injunctive relief because, among other things, Wise had not shown he was likely to succeed on the merits of his claim that the defendants violated NEPA.

## II. Analysis

We reject the defendants' argument that we lack jurisdiction over this interlocutory appeal. We have jurisdiction under 28 U.S.C. § 1292(a)(1) because the district court's order had the practical effect of denying a preliminary injunction. See Abbott v. Perez, 138 S. Ct. 2305, 2319 (2018) ("We have previously made clear that where an order has the 'practical effect' of granting or denying an injunction, it should be treated as such for purposes of appellate jurisdiction."); Sampson v. Murray, 415 U.S. 61, 86-88 (1974) (treating an order labeled a temporary restraining as a preliminary injunction because it had the same practical effect as a preliminary injunction). We also reject Arkansas DOT's argument that the appeal should be dismissed as moot because the action that Wise sought to enjoin has been completed. Arkansas DOT contends that Wise merely sought to enjoin the demolition of the Hughes Street Overpass. The record and the district court's order make clear, however, that Wise sought to enjoin any further work on the I-630 project, and Arkansas DOT's argument to the contrary is misguided.

-4-

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); see also Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc). We review the denial of a preliminary injunction for abuse of discretion. Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs, 826 F.3d 1030, 1035-36 (8th Cir. 2016). A district court abuses its discretion if it "rests its conclusion on clearly erroneous factual findings or if its decision relies on erroneous legal conclusions." Id. at 1036 (quoting PCTV Gold, Inc. v. SpeedNet, LLC, 508 F.3d 1137, 1142 (8th Cir. 2007)).

Wise argues that the district court erred in concluding that he would not succeed on the merits of his NEPA claim. He contends that the I-630 project required FHWA to complete an environmental assessment or an environmental impact statement, because the project did not take place within the "existing operational right-of-way" and thus did not satisfy the categorical exclusion set forth in 23 C.F.R. § 771.177(c)(22). According to Wise, the I-630 project's additional travel lanes would require expanded clear zones, which would necessarily be built in areas outside the existing operational right-of-way.

Wise argues that the district court rested its decision on the erroneous legal conclusion that "existing operational right-of-way" meant the entire right-of-way owned by Arkansas DOT. He contends that the term is limited to lanes of travel, shoulders, and clear zones. This limitation conflicts with the definition provided in the regulation, which states that an "[e]xisting operational right-of-way refers to right-of-way that has been disturbed for an existing transportation facility or is maintained for a transportation purpose." See 23 C.F.R. § 771.117(c)(22). The regulation explains that an existing operational right-of-way includes features like mitigation areas and landscaping. Id. (providing a non-exhaustive list of "features associated

with the physical footprint of the transportation facility" and "areas maintained for transportation purposes").[2]

Wise claims that his reading of the regulation is supported by the explanatory text accompanying the notice of the final rule, which states, "a project within the operational right-of-way that requires the creation of new clear zones or extension of clear zone areas beyond what already exists would not qualify" for categorical exclusion. Environmental Impact & Related Procedures, 79 Fed. Reg. 2107-01, 2113 (Jan. 13, 2014). To interpret this text consistently with the regulation, we conclude that the explanatory text does not apply when the new or extended clear zones are built within the "existing operational right-of-way," as defined by the regulation. We

---

[2]During the relevant time period the regulation provided:

Existing operational right-of-way refers to right-of-way that has been disturbed for an existing transportation facility or is maintained for a transportation purpose. This area includes the features associated with the physical footprint of the transportation facility (including the roadway, bridges, interchanges, culverts, drainage, fixed guideways, mitigation areas, etc.) and other areas maintained for transportation purposes such as clear zone, traffic control signage, landscaping, any rest areas with direct access to a controlled access highway, areas maintained for safety and security of a transportation facility, parking facilities with direct access to an existing transportation facility, transit power substations, transit venting structures, and transit maintenance facilities. Portions of the right-of-way that have not been disturbed or that are not maintained for transportation purposes are not in the existing operational right-of-way.

23 C.F.R. § 771.117(c)(22). The regulation now states, "Existing operational right-of-way means all real property interests acquired for the construction, operation, or mitigation of a project." Id. (effective Nov. 28, 2018); see Environmental Impacts & Related Procedures, 83 Fed. Reg. 54,480, 54,487 (Oct. 29, 2018) (revising the definition of "existing operational right-of-way").

thus conclude that the district court properly rejected Wise's proposed limitation on the term's definition.

Applying the plain language of the regulation, the district court concluded that Wise did not present evidence to establish that the area required for the I-630 project required expansion beyond the existing operational right-of-way. Wise has offered calculations regarding the additional area required for the project's new traffic lanes and expanded clear zones, and he contends that "basic mathematics" render not credible Wiley's testimony that the I-630 project will take place within the existing operational right-of-way. Appellant's Br. 13. But Wise again incorrectly limits the term's definition to travel lanes, shoulders, and clear zones, and he has not shown that the additional area previously had not been disturbed or maintained for transportation purposes. We thus conclude that Wise has failed to show that the district court relied on any clearly erroneous factual findings in denying Wise's motion for injunctive relief.

Finally, Wise argues that the I-630 project does not qualify for a categorical exclusion because it will have significant noise and air-quality impact and it involves unusual circumstances. See 23 C.F.R. § 771.117(a)-(b). He has not shown that FHWA's determination to the contrary is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, however. See Friends of Richards-Gebaur Airport, 251 F.3d at 1187 ("We review an agency's determination that an action falls within a categorical exclusion under the arbitrary and capricious standard.").

Having failed to show that his claim was likely to succeed on the merits, Wise has not established that the district court abused its discretion in denying his request for injunctive relief. The order denying Wise's request for a preliminary injunction is affirmed.

_____

-7-